836 P.2d 965

In the Matter of the Reinstatement of a Member of the State Bar of Arizona, Merrill W. ROBBINS, Applicant.

No. SB–91–0038–R.

Supreme Court of Arizona, En Banc.

Aug. 18, 1992.

Harrison, Harper, Christian & Dichter, P.C. by Mark I. Harrison and Stephen Montoya, Phoenix, for applicant.

State Bar of Arizona by Harriet L. Turney, Chief Bar Counsel, Phoenix.

## OPINION

ZLAKET, Justice.

Applicant, Merrill W. Robbins, petitioned for reinstatement to active bar membership pursuant to Rule 72, Sup.Ct.R., 17A A.R.S. By order dated April 9, 1992, we granted his request, subject to the conditions set forth herein, and indicated that this opinion would follow.

### FACTUAL BACKGROUND

Applicant was admitted to the State Bar of Arizona in 1964. He practiced law in Arizona until August 1, 1975, when he resigned in lieu of disbarment. It serves little purpose to recite the details of his professional demise. Suffice it to say that Applicant apparently suffered a severe episode of depression beginning in 1973, during which he committed serious breaches of the Code of Professional Responsibility then in effect. His offenses included the misappropriation of client funds. His problems were neither alcohol- nor drug-related.

Applicant's conduct during this time resulted not only in the loss of his right to practice law, but also in the end of his marriage, excommunication from his church, and serious erosion of his relationships with family and friends. This self-destructive period culminated with a federal prison term, of which Applicant served one year in 1979, for forging a client's name to a government check.

Applicant's slide from respected member of the community to convicted felon is thankfully not the end of his story. According to substantial evidence taken by the hearing committee, he worked hard to reform himself, and has now been a good citizen for more than a decade. Applicant demonstrates clear remorse for his misdeeds, and by all accounts has straightened out his life. He also has endeavored, where possible, to make restitution for losses he caused.

### DISCUSSION

In considering an application for reinstatement, this court is concerned first and foremost with protecting the public.

Disbarment, or resignation in lieu of disbarment, is not necessarily a permanent status, nor should it be considered punishment. Its purpose is to protect the public, the profession and the justice system. *In re MacAskill*, 163 Ariz. 354, 361, 788 P.2d 87, 94 (1990). Hence, neither the fact that Applicant has been sufficiently sanctioned, nor the mere passage of time, is enough to warrant reinstatement. Applicant's burden is to show, by clear and convincing evidence, that he has been rehabilitated, that he is competent, and that he poses no further threat to members of the public. Rule 72(e), Sup.Ct.R., 17A A.R.S. *See* American Bar Association *Standards for Imposing Lawyer Sanctions*, comment to § 2.10, "Readmission and Reinstatement." It is irrelevant whether an applicant was disbarred, or resigned in lieu of disbarment. The effect is the same, as is the burden associated with reinstatement. *In re Kamins*, 752 P.2d 1125, 1129 (Okla.1988). The more egregious the misconduct, the heavier an applicant's burden to prove his or her present fitness to practice law. Clearly, the misappropriation of client funds is a serious offense.

None of us has a crystal ball, so there can be no guarantees for the future. We must do our best, however, to ensure that Applicant is able to shoulder the serious duties and obligations of an attorney without breaching the trust and professional responsibility imposed on him by law.

In *Application of Spriggs*, 90 Ariz. 387, 388 n. 1, 368 P.2d 456, 457 n. 1 (1962), we noted four major factors to be considered in passing upon an application for reinstatement: "the applicant's character and standing prior to the disbarment, the nature and character of the charge for which he was disbarred, his conduct subsequent to the disbarment, and the time that has elapsed between the disbarment and the application for reinstatement." Other jurisdictions add to this list. Maryland, for example, also considers an applicant's current qualifications, character and competence to return to the practice of law. *See, e.g., In re Barton*, 273 Md. 377, 379–81, 329 A.2d 102, 104 (1974). Washington takes into account, as well, an applicant's stand-

ing, reputation and ethics prior to the disbarment, the sufficiency of punishment, if any, efforts at restitution, and the sincerity and truthfulness of an applicant in presenting and discussing the factors relating to disbarment and reinstatement. *In re Rosellini*, 108 Wash.2d 350, 353–57, 739 P.2d 658, 660–61 (1987). Oklahoma additionally looks at "the petitioner's demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the legal profession." *In re Reinstatement of Crabtree*, 793 P.2d 296, 297 (Okla.1990).

█ We will heed each of these factors, but the bottom line must always be whether the applicant has "affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct," *In re Krogh*, 93 Wash.2d 504, 508, 610 P.2d 1319, 1321 (1980), i.e., whether he has been rehabilitated. Because the inquiry is fact intensive, each case must be determined on its own merits. We therefore have examined the record carefully in reaching our decision. It is significant, but not dispositive, that the State Bar does not oppose reinstatement here. It also is important that Applicant has made substantial restitution to those injured by his conduct, and has agreed to continue such efforts. Evidence at the hearing included testimony from reputable witnesses who have known and observed Applicant for a number of years. They verified his turnaround and his awareness of the wrong he has done. They testified that he has become a solid citizen.

The Disciplinary Commission found in Applicant's favor and recommended reinstatement, even though the hearing committee had previously voted otherwise. The committee's reluctance was primarily due to Applicant's failure to have filed income tax returns for several years in the mid–1980's, and his misstatement in a subsequent bankruptcy petition. The uncontroverted testimony, however, and the findings of the Commission, indicated that these omissions innocently resulted from a misunderstanding of the tax laws governing the relationship between income and

losses carried over from prior years. Applicant's expert witness, an attorney formerly with the Office of Chief Counsel, United States Department of the Treasury, testified that Applicant's mistake was commonly made, even by professionals, and caused harm to no one. Further, the witness indicated that the Internal Revenue Service, which she had regularly advised and represented, would have no interest in pursuing Applicant under these circumstances. No tax was ever due or payable, and all returns have now been filed. While we give deference to the committee and its findings, our independent review of the evidence leads us to agree with the Disciplinary Commission.

## DISPOSITION

Based on the foregoing, we have reinstated Applicant on the following terms and conditions:

1) Applicant shall pay dues as required by the State Bar.

2) Applicant shall be on probation for two years, on such terms and conditions as the State Bar may reasonably require, including but not limited to the following:

A. Applicant shall comply with the Rules of Professional Conduct;

B. A practice monitor, appointed and approved by the State Bar, will review Applicant's cases and submit monthly reports to the Bar regarding Applicant's caseload, the extent to which he is rendering timely, competent legal services, and any apparent breach of the terms of probation;

C. A financial monitor, appointed and approved by the State Bar, will oversee Applicant's financial affairs, including his trust and operating accounts, and will submit quarterly reports to the Bar regarding the manner in which Applicant is handling his financial affairs, and any apparent breach of the terms of probation;

D. The State Bar shall perform random audits of Applicant's trust and operating accounts on no less than a quarterly basis;

E. Applicant shall authorize his bank or banks to notify the State Bar of any overdrafts in his trust account;

F. Applicant shall submit copies of his state and federal tax returns to the State Bar for the period of probation.

3) Applicant shall pay all costs of disciplinary proceedings, including but not limited to auditing and monitoring expenses incurred as a result of the order of reinstatement, in amounts to be determined by the State Bar.

4) Applicant shall be required to make restitution to the Client Security Fund of the State Bar, and all former clients having unsatisfied claims against him, to the fullest extent reasonably possible. In this regard, the State Bar has been ordered to fairly determine the amount of restitution due and owing, and the identity of the parties to whom it is owed, recognizing the difficulty in ascertainment and computation resulting from the long passage of time since Applicant's resignation, and the less than perfect records of the Fund and the Bar. Applicant and the State Bar have reached satisfactory agreement, approved by the court, in connection with this obligation.

5) Applicant shall make the payments required in paragraphs 3 and 4 above on reasonable terms and conditions established by the State Bar. Such payments shall be completed no later than the expiration of the probationary period referred to in paragraph 2 above. Should Applicant fail to do so, this court will entertain an immediate motion to revoke his reinstatement. If necessary, the probationary period may be extended on stipulation and/or on petition to this court.

6) Applicant has been required to submit proof of competence, including certification by the bar examiners of the successful completion of an examination for admission to practice administered prior to his reinstatement.

FELDMAN, C.J., CORCORAN, J., and MELVYN T. SHELLEY (Retired) and JEFFERSON L. LANKFORD, Judges, Court of Appeals, concur.

MOELLER, V.C.J., and CAMERON, J. (now retired) did not participate in this

decision. Pursuant to Article 6, Section 3 of the Arizona Constitution, MELVYN T. SHELLEY and JEFFERSON L. LANKFORD, Judges, of the Arizona Court of Appeals, Division One, were designated to sit in their stead.