**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD, Complainant,**

v.

**Michael Gerard REILLY, Respondent.**

No. 05–1365.

Supreme Court of Iowa.

Jan. 13, 2006.

Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.

Kristopher K. Madsen, Council Bluffs, for respondent.

CARTER, Justice.

This matter is before us on a review of the findings and recommendation of the Grievance Commission concerning alleged ethical violations by respondent, attorney Michael G. Reilly. The review is undertaken pursuant to the provisions of Iowa Court Rule 35.10. The commission found that respondent was guilty of a conversion of clients' funds and had perpetrated a check-kiting scheme that caused a substantial loss to one of the banks involved in the transaction. The Grievance Commission recommended that Reilly be suspended from practice for a period of three years. After reviewing the record and considering the arguments presented, we conclude that the Grievance Commission's recommendation is inconsistent with the discipline that we have imposed in other cases in which clients' funds have been misappropriated. Consistency with our past decisions and protection of the public warrants the revocation of the offending attorney's license.

Michael G. Reilly is an attorney who has practiced law in Council Bluffs for many

years and has gained a favorable reputation as a diligent lawyer. Respondent represented the parents of Jacob Reid, a child who had sustained a serious eye injury. He diligently represented the Reids in a claim against persons responsible for the injury, and ultimately a settlement was arrived at under which Jacob Reid was to receive the sum of $137,500. The settlement draft was received by respondent on November 17, 2000, and he immediately deposited it in his firm trust account. A few days prior to receipt of that draft, he had caused a conservatorship to be opened for Jacob Reid and had been designated as attorney for the conservatorship.

Soon after receipt of the settlement funds, checks were issued from the trust account of respondent's law firm to the firm for the amount of respondent's contingent fee and the firm's out-of-pocket expenses in pursuing the case. After those funds had been withdrawn, a balance of $99,736.75 remained in the trust account.

In December 2000 and January 2001, respondent withdrew the entire $99,736.75 balance of Jacob Reid's funds from his firm trust account. The two checks written in December totaling $9000 were drawn by respondent for cash and signed by him. He has admitted that the proceeds were used for his personal obligations. The January 2001 check was payable to First Star Bank in the sum of $90,736.75. It was drawn by a firm bookkeeper and signed by another member of respondent's law firm based on respondent's representation that it was to be remitted to the conservator's bank account. Instead, respondent deposited that check in his personal banking account.

In August and September 2001, respondent endeavored to make restitution of Jacob Reid's funds by depositing $96,040 in a conservatorship account for Jacob Reid that had been established at Salomon Smith Barney, Inc.[1] A friend had agreed to loan respondent the funds necessary to accomplish that purpose. Relying on that agreement, respondent wrote a check on a personal bank account for $96,040 to Salomon Smith Barney. Unfortunately, respondent's friend was unable to loan him the necessary funds, and the balance of his personal bank account at Pinnacle Bank was not sufficient to cover the check. It was returned unpaid.

On September 24, 2001, respondent wrote a second check on his personal bank account at Pinnacle Bank to Salomon Smith Barney, this time in the amount of $96,070. Because he had deposited a check in Pinnacle Bank in an amount sufficient to cover that withdrawal, the Pinnacle Bank check cleared, and the conservatorship account received the funds. The check deposited in respondent's Pinnacle Bank account also cleared, but First Star Bank, which had paid that check, was saddled with a $96,000 overdrawn account based on respondent's deposit of an insufficient-funds check in that bank.

Respondent did not make restitution of First Star Bank's loss for over a year. In the meantime, First Star Bank had notified federal law enforcement authorities of its loss. The resulting investigation resulted in a letter from the United States attorney to our client security and disciplinary commission revealing the facts that we have recited in this opinion. Further investigation by the Iowa Supreme Court Attorney Disciplinary Board confirmed those facts.

---

1. Respondent contends that the difference between this amount and the total amount of funds that had been misappropriated equals the amount of Jacob Reid's medical expenses that were paid by respondent.

Respondent has at all times conceded the conversion of Jacob Reid's funds that had been paid into his firm's trust account. He has not conceded any illegality with respect to the check overdraft at First Star Bank based on his assertion that he believed he would have funds forthcoming to cover the First Star Bank check before it was returned to that bank for payment.

Based on the transactions we have recited, the Grievance Commission found that respondent had violated DR 9—102(A), which provides: "All funds of clients paid to a lawyer or law firm ... shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in DR 9—102(C)." We have previously held that this disciplinary rule is violated in situations in which an attorney has deposited client funds into his trust account and then withdrawn them for his personal use without client permission. *Comm. on Prof'l Ethics & Conduct v. Silver*, 395 N.W.2d 877, 879 (Iowa 1986). The commission further found that respondent had violated Disciplinary Rules 1—102(A)(1) (a lawyer shall not violate a disciplinary rule), (3) (a lawyer shall not engage in illegal conduct), (4) (a lawyer shall not engage in conduct involving dishonesty), and (6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law). The facts as agreed to by respondent establish a violation of each of these disciplinary rules by a convincing preponderance of the evidence.

■■■ This court gives respectful consideration to the Grievance Commission's recommendation concerning the appropriate sanction for an attorney's ethical violations. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Waples*, 677 N.W.2d 740, 743 (Iowa 2004). However, on review of those recommendations under Iowa Court Rule 35.10, we are free to impose a lesser or greater sanction than the discipline recommended by the Grievance Commission. *Id.*

We have considered the misappropriation of a client's funds by a lawyer as being particularly reprehensible and, almost universally, calling for a revocation of license. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson*, 687 N.W.2d 587, 590 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell*, 650 N.W.2d 648, 652 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Ottesen*, 525 N.W.2d 865, 866 (Iowa 1994); *Comm. on Prof'l Ethics & Conduct v. Shepherd*, 431 N.W.2d 342, 344 (Iowa 1988). Instances in which revocation has not been ordered for the taking of a client's funds have involved situations in which the attorney had a colorable future claim to the funds or did not take the funds for his own use. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen*, 586 N.W.2d 383, 391 (Iowa 1998); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 192 (Iowa 1997); *Comm. on Prof'l Ethics & Conduct v. Rauch*, 486 N.W.2d 39, 40 (Iowa 1992). We have not been dissuaded from ordering revocation of license in situations in which the embezzled funds have been returned prior to the discovery of the misappropriation. *Anderson*, 687 N.W.2d at 590; *Comm. on Prof'l Ethics & Conduct v. Pappas*, 313 N.W.2d 532, 533–34 (Iowa 1981). Revocation of the offending attorney's license has been imposed in a situation involving a substantially smaller misappropriation than those occurring in the present case. *Comm. on Prof'l Ethics & Conduct v. Rowe*, 225 N.W.2d 103, 104 (Iowa 1975) (client funds totaling $1500 placed in attorney's personal checking account—license revoked).

Several highly regarded members of the local bar have attested to respondent's character, including his reputation for

truth, veracity, and honesty. Similar endorsements have been received from the local judges before whom respondent has regularly practiced. We have no reason to doubt that, before embarking on the downward spiral that produced the transgressions now under consideration, respondent was all that these proponents attest he was. His fall from grace was precipitated by an uncontrollable gambling habit that left him constantly in need of funds. Unfortunately, that is a matter which, although regrettable and cause for sympathy, does not obviate the seriousness of the improper attorney conduct that has occurred. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett,* 674 N.W.2d 139, 143 (Iowa 2004) (revocation ordered as sanction for misappropriation of funds motivated in part by gambling addiction). Nor does the fact that respondent has sought and successfully received counseling to alleviate his gambling addiction. *Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Schatz,* 595 N.W.2d 794, 796 (Iowa 1999) (successful treatment for depression subsequent to misappropriation of funds does not preclude revocation of attorney's license).

The misappropriation of client funds of which respondent has been guilty would by itself warrant a revocation of his license. The reckless check-kiting scheme undertaken in an effort to replace the funds that had been taken is an aggravating factor. Even if respondent sincerely believed that he would be able to obtain the necessary funds to cover the checks that he had written, this was a reckless disregard for his true financial position. That disregard caused a very substantial loss for the First Star Bank, which was not repaid for more than a year. It is fortunate that respondent has been able to make restitution to both Jacob Reid and the First Star Bank. Circumstances may have been otherwise

so as not to permit him to do so. He was not free to take this gamble.

After fully considering the matter now before us, we order that the license of respondent, Michael G. Reilly, is revoked effective with the filing of this opinion. Costs are assessed to respondent as provided in Iowa Court Rule 35.25(1).

**LICENSE REVOKED.**

All justices concur except LARSON and WIGGINS, JJ., who take no part.