# IN THE SUPREME COURT OF IOWA

No. 05–1365

Filed September 2, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MICHAEL GERARD REILLY,**

Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

A former attorney whose license to practice law we previously revoked submitted an application for reinstatement of his license to practice law in Iowa. **APPLICATION FOR REINSTATEMENT PROVISIONALLY GRANTED SUBJECT TO THE CONDITIONS SET FORTH IN THIS OPINION.**

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Michael G. Reilly, Council Bluffs, pro se.

**PER CURIAM.**

Ten years ago, we revoked the respondent's license to practice law. This matter comes before us on the respondent's application for reinstatement of his license to practice law under Iowa Court Rule 34.25(9). We provisionally grant the respondent's application for reinstatement of his law license subject to the conditions set forth in this opinion.

## I. Background Facts and Proceedings.

We admitted respondent Michael G. Reilly to practice law in Iowa in June 1981, and the Nebraska Supreme Court admitted him to practice law in Nebraska in September 1982. In 2006, we revoked his license to practice law in Iowa. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly*, 708 N.W.2d 82, 82 (Iowa 2006). Thereafter, the Nebraska Supreme Court disbarred him in a reciprocal disciplinary proceeding. *State ex rel. Counsel for Discipline of Neb. Supreme Ct. v. Reilly*, 712 N.W.2d 278, 278–79 (Neb. 2006) (per curiam). Prior to the revocation of his law licenses, Reilly engaged in the private practice of law at a law firm in Council Bluffs, Iowa. He had an excellent reputation as a diligent and skilled trial attorney.

We revoked Reilly's license to practice law in Iowa because he misappropriated client funds. In November 2000, Reilly obtained a settlement of $137,500 on behalf of the parents of a child who sustained a serious eye injury and caused a conservatorship to be opened for the child. *Reilly*, 708 N.W.2d at 83. Upon receiving the settlement funds, Reilly deposited them in his firm's trust account. *Id.* In addition to the checks issued from the trust account to cover the contingent fee and expenses associated with the case, Reilly deposited additional checks totaling the remaining balance of the settlement funds in his personal

bank account rather than the conservatorship account in December 2000 and January 2001. *Id.* At the time, Reilly had an active gambling addiction that caused him to be constantly in need of funds. *Id.* at 85.

In August and September 2001, after he unsuccessfully attempted to secure a loan from a friend to repay the misappropriated funds, Reilly wrote a series of kited checks between his personal accounts attempting to float a check to the conservatorship account to replace the misappropriated funds. *Id.* at 83. Eventually, a bank associated with one of Reilly's personal accounts honored a check he wrote to the conservatorship account after a bank associated with another one of his personal accounts honored a kited check he had written. *Id.* The account with the second bank ended up $96,000 overdrawn because the bank was unable to cash another check Reilly had written from yet another account with insufficient funds. *Id.* By the time Reilly repaid the bank the following year, it had already notified federal authorities. *Id.*

After our client security and disciplinary commissions received a letter from the United States Attorney recounting these events and the Iowa Supreme Court Attorney Disciplinary Board conducted an investigation confirming them, the Grievance Commission of the Supreme Court of Iowa recommended we suspend Reilly from the practice of law for three years. *Id.* at 82, 83–84. Instead, we concluded consistency with our past decisions addressing misappropriation of client funds and the protection of the public warranted a harsher sanction. In January 2006, we revoked Reilly's license to practice law in Iowa. *Id.* at 85.

In January 2009, Reilly filed an application for reinstatement of his license to practice law in Iowa based on the progress he had made in

addressing his gambling addiction. The Board opposed reinstatement, noting the Iowa Court Rules contained no provision addressing reinstatement following a license revocation as opposed to a license suspension. Though the Board acknowledged we had reinstated a revoked license in the past, it insisted the standard for assessing whether reinstatement was appropriate was set forth in *Committee on Professional Ethics & Conduct v. Brodsky*, 487 N.W.2d 674 (Iowa 1992), in which we stated,

> License revocations are ordinarily permanent in Iowa. Indeed our rules spell out no special procedure for applying for readmission by a lawyer whose license has been revoked.
>
> On occasion we nevertheless consider such applications under our inherent power and, in extremely rare cases, have granted them. These rare cases have arisen where, in long retrospect, it appears the need for permanent revocation was debatable, and where there has been a demonstrated reformation on the part of the lawyer so that the public interest would not be compromised by readmission.

*Id.* at 675. Following a hearing, we issued an order in which we rejected the application for reinstatement. In the order, we concluded Reilly had not "carried his heavy burden of showing that the need for permanent revocation was debatable and that he has undergone such a reformation that the public interest would not be threatened by readmitting him to the practice of law."

In May 2015, following a period of public comment, we amended Iowa Court Rule 35.14 to renumber existing provisions within the rule and incorporate new provisions setting forth a procedure by which an individual whose license to practice law has been revoked may apply for its reinstatement. The amendments became effective September 1, 2015. By subsequent amendment shortly thereafter, we moved the provisions

addressing reinstatement to Iowa Court Rule 34.25.[1]  The purpose of the amendment was to allow an attorney who has rehabilitated him or herself the opportunity to petition the court for reinstatement and prove to the court he or she has good moral character, is fit to practice law, and is in all respects worthy of readmission to the Iowa bar. Reinstatement under the rule is not meant to be automatic.

In November 2015, Reilly filed his second application for reinstatement of his license to practice law in the State of Iowa with this court.  Prior to submitting the application, Reilly submitted a request for preparation of a character and fitness report by the National Conference of Bar Examiners (NCBE) and paid an administrative fee to the Iowa Board of Law Examiners as required by Iowa Court Rule 34.25(8).  In his application for reinstatement, Reilly first reported that we admitted him to the Iowa bar in June 1981 and revoked his license to practice law in Iowa in January 2006.  *See* Iowa Ct. R. 34.25(9)(*b*).  Reilly next affirmed that he had complied in all respects with all orders of this court pertaining to his license revocation and the Iowa Court Rule governing the notification of clients, opposing counsel, and courts upon revocation of an attorney's license to practice law.  *See id.*  Finally, he affirmed that the Client Security Trust Fund expended no funds due to his conduct. *See id.* r. 34.25(9)(*e*).  Reilly attached a letter from the Office of Professional Regulation confirming he had paid all fees set forth in the rules governing the Client Security Commission, his annual continuing legal education fees, and all costs associated with the disciplinary matter that culminated in the revocation of his license to practice law.  *See id.* r. 34.25(9)(*d*)–(*e*).

---

[1]The subsequent amendment became effective April 1, 2016, after Reilly filed his second application for reinstatement.

With his application for reinstatement, Reilly submitted an affidavit detailing his personal history, work history, and educational history following his license revocation along with letters from six attorneys currently practicing in the Fourth Judicial District of Iowa recommending his license to practice law be reinstated. *See id.* r. 34.25(9)(*c*). In the affidavit, Reilly indicated he received treatment for his compulsive gambling addiction from April 2002 through November 2008. He also indicated he has abstained from casino gambling since February 2002. Reilly also described his work immediately following his license revocation as a litigation consultant offering mediation services to law firms and individual attorneys, as well as his current work providing consulting services on insurance litigation and claims handling involving insurance policies of various types issued to clients throughout the country. Finally, Reilly indicated that although he has not received any formal educational training since we revoked his license, he has maintained his familiarity with current Iowa law by regularly reviewing state and federal appellate court decisions as well as through his employment, which requires him to deal with statutes, rules, and regulations in most states.

The recommendation letters Reilly submitted from members of the bar recommending his reinstatement described him as a particularly diligent and skilled trial attorney who consistently accepted responsibility for the actions that led to the revocation of his license and expressed remorse for the harm they caused. The individuals who penned the letters were practicing attorneys who knew Reilly when he was still in practice and remained in close contact with him after we revoked his license. Each expressed the opinion that Reilly is of good moral character and fit to practice law. The letters also described how Reilly

aggressively pursued treatment for and overcame the gambling addiction that motivated him to engage in the conduct for which we revoked his law license.[2]

The Iowa Supreme Court Attorney Disciplinary Board filed a resistance to the application for reinstatement urging us to deny it. Relying on *Brodsky*, the Board argued reinstatement is inappropriate in this case because revocation is indisputably the appropriate sanction for conduct involving the conversion of client funds to which an attorney has no colorable future claim. Moreover, the Board argued the fact that Reilly misappropriated client funds confirms that he lacks the fundamental honesty and integrity necessary to be an attorney. Although the Board acknowledged Reilly had an active gambling addiction when he misappropriated client funds, it argued his addiction is irrelevant to the question of whether reinstatement of his law license is appropriate because no illness, regardless of its severity, can excuse an attorney's dishonest conduct. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 191 (Iowa 1997). Finally, the Board claimed we should not reinstate Reilly's law license because the passage of time, his payment of restitution, and his completion of a treatment program did nothing to erase the harm to the public and the legal profession that resulted from his conduct.

The board of law examiners also filed a report and recommendation concerning the application for reinstatement. *See* Iowa Ct. R. 34.25(13). The board noted that, with the exception of two

---

[2]After Reilly filed his application for reinstatement, we subsequently received two additional letters from district court judges in the Fourth Judicial District of Iowa recommending his application to practice law in Iowa be reinstated. The letters were substantially similar to the letters from attorneys that Reilly submitted with his application for reinstatement.

foreclosure proceedings closely connected to the events leading up to the revocation of his license, Reilly has had no significant involvement in any criminal or civil proceedings since we revoked his license and has maintained consistent employment since that time. Although the board noted that Reilly appears to have made great strides in overcoming his gambling addiction, a four-member majority of the board declined to recommend reinstatement of his law license, concluding Reilly submitted insufficient evidence concerning his rehabilitation to demonstrate he presently has the requisite moral character to be worthy of readmission to the bar. In particular, the majority noted the status of Reilly's gambling addiction had not been professionally evaluated since 2008. The majority also noted Reilly did not submit an expert opinion addressing the likelihood that his addiction would relapse or a copy of his current credit report. Finally, the majority expressed concern that Reilly indicated he has abstained from "casino gambling" in his application for reinstatement but did not address whether he has engaged in other forms of gambling. Two members of the board dissented, concluding Reilly had met his burden of demonstrating he is "of good moral character and in all respects worthy of readmission to the bar" despite the seriousness of the conduct that led to the revocation of his license. The dissenters noted Reilly's character and fitness examination revealed no information to suggest he would present a danger to the public if we reinstated his license.[3] *See id.* r. 34.25(9)(*c*).

Following a hearing on the application for reinstatement in January 2016, we ordered Reilly to provide copies of his complete credit

---

[3]The Iowa Board of Law Examiners consists of five persons admitted to practice law in the state and two persons not admitted to practice law in the state. *See* Iowa Ct. R. 31.1(1). One board member took no part in the board decision concerning the report and recommendation.

report and a report evaluating the status of his gambling addiction prepared by a qualified professional to this court and the board of law examiners. *See id.* r. 34.25(11), (15). We further ordered the board of law examiners to interview Reilly and file a supplemental report and recommendation concerning his application for reinstatement upon receipt of the credit report and evaluation. *See id.* r. 34.25(11). Finally, we ordered the Iowa Supreme Court Attorney Disciplinary Board to file a supplemental statement indicating whether reinstatement is warranted under the facts of this case. *See id.* We held this matter in abeyance pending our receipt of the requested documents from Reilly, the board of law examiners, and the Iowa Supreme Court Attorney Disciplinary Board.

Thereafter, Reilly filed a copy of his current credit report and a written report evaluating the status of his gambling addiction prepared by the licensed mental health provider and certified compulsive gambling counselor who treated him from 2002 to 2008. The report concluded Reilly has continually kept his casino gambling addiction in full remission and requires no further treatment. Though it acknowledged Reilly admitted to occasionally participating in an office pool, purchasing a lottery ticket, or betting on a golf game, it indicated that none of these forms of gambling were problematic in nature for Reilly. The credit report Reilly submitted supports this conclusion, as it showed that Reilly makes his payments on time, has little revolving debt, and has a credit score in the very-good-to-exceptional range.

Upon receiving the evaluation and credit report, the board of law examiners interviewed Reilly and prepared a supplemental report and recommendation concerning his application for reinstatement. The supplemental report and recommendation indicated a majority of the

board agreed Reilly had met his burden of demonstrating he is "of good moral character and in all respects worthy of readmission to the bar." Thus, the board recommended we reinstate his license to practice law. *Id.* r. 34.25(13). Two board members dissented without providing an explanation.[4]

In its supplemental statement, the Iowa Supreme Court Attorney Disciplinary Board once again urged us to deny Reilly's application for reinstatement of his license to practice law. More precisely, the Board argued any former attorney whose law license has been revoked due to misappropriation of client funds with respect to which he or she had no colorable future claim is ineligible for reinstatement because such conduct is fundamentally dishonest and worthy of a permanent sanction, not a temporary one. In his response to the supplemental statement, Reilly pointed out the grievance commission did not find his character beyond redemption or fundamentally unfit for the practice of law in 2006 when it concluded a three-year suspension, rather than revocation of his license, was the appropriate sanction for his misconduct.

Upon receipt of the additional documents we requested from Reilly, the board of law examiners, and the Iowa Supreme Court Attorney Disciplinary Board, we took up the matter for resolution without further oral argument.

**II. Standards for Determining the Eligibility of an Applicant Seeking Reinstatement of His or Her License to Practice Law in Iowa.**

Iowa Court Rule 34.25(15) states that a former attorney who applies for reinstatement of his or her license to practice law in Iowa

---

[4]Once again, one board member took no part in the board decision concerning the report and recommendation.

"bears the burden of demonstrating that the applicant is of good moral character, is fit to practice law, and has complied in all respects with the terms of the order or judgment of revocation." It further indicates that an applicant for reinstatement must submit "satisfactory proof that the applicant is of good moral character and is in all respects worthy of readmission to the bar." Iowa Ct. R. 34.25(9)(*c*). Accordingly, an applicant seeking reinstatement of his or her license to practice law must demonstrate his or her moral character and fitness for the practice of law by a convincing preponderance of the evidence. *See In re Peterson*, 439 N.W.2d 165, 166 (Iowa 1989) (concluding an applicant for admission to the Iowa bar must demonstrate his or her moral fitness to practice law by a convincing preponderance of the evidence before we will reverse a decision of the board of law examiners denying him or her an opportunity to sit for the bar because by rule the applicant bears the burden of submitting "satisfactory proof" of his or her fitness to practice law). "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). Numerous subsections of the rule set forth various prerequisites and procedural requirements associated with submitting an application for reinstatement. *See* Iowa Ct. R. 34.25(7), (8), (9), (15).

Our review of an application for reinstatement is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 739 (Iowa 2013). In reviewing an application for reinstatement, we remain mindful that the primary goal of attorney discipline is protection of the public, not punishment of the attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 487 (Iowa 2014). Therefore, our primary

task in considering an application for reinstatement is to assess whether the applicant seeking reinstatement of his or her law license has proved he or she has good moral character, is fit to practice law, and is in all respects worthy of readmission to the Iowa bar. *See* Iowa Ct. R. 34.25(9), (15).

We now contemplate the factors we will consider in making that assessment. The American Bar Association has promulgated a model reinstatement rule listing eight criteria for consideration in assessing an application for reinstatement. *See* Model Rules for Lawyer Disciplinary Enf't r. 25(E) (Am. Bar Ass'n 2002).[5] Similarly, some states in which

---

[5]The model rule states,

A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria, or, if not, presents good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted:

(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders except to the extent that they are abated under Rule 26.

(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.

(3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer shall not be reinstated unless:

 (a) the lawyer has pursued appropriate rehabilitative treatment;

 (b) the lawyer has abstained from the use of alcohol or other drugs for at least [one year]; and

 (c) the lawyer is likely to continue to abstain from alcohol or other drugs.

(4) The lawyer recognizes the wrongfulnesss and seriousness of the misconduct for which the lawyer was suspended or disbarred.

(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.

(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.

disbarred attorneys may be reinstated have adopted court or disciplinary rules specifying the criteria to be considered in assessing applications for reinstatement. *See, e.g.*, Ill. Supreme Ct. R. 767(f); N.D. R. Lawyer Discipline 4.5(F); Md. R. 19-752(h)(2). In states with less specific reinstatement rules, courts "have adopted diverse ethical inventories to assess an applicant for reinstatement." *In re Pier*, 561 N.W.2d 297, 300 & n.3 (S.D. 1997) (surveying cases).

The myriad of factors relied upon in assessing applications for reinstatement vary from state to state. *See* M.C. Dransfield, Annotation, *Reinstatement of Attorney After Disbarment, Suspension, or Resignation*, 70 A.L.R.2d 268, §§ 11–18, at 283–93 (1960 & 2007 Later Case Service & Supp. 2015). Furthermore, there is no clear consensus among state supreme courts or disciplinary agencies as to how to weigh the relevant factors. G.M. Filisko, *The Rough Road to Redemption*, 99 A.B.A. J. 46, 49 (2013). Nonetheless, the diverse ethical inventories and rules relied upon in assessing the reinstatement applications of previously disbarred attorneys generally serve a common purpose—to aid in determining the likelihood that "the public can rely on the competence and integrity of the previously disbarred attorney." *In re Cooke*, 42 A.3d 610, 615–16 (Md. 2012) (quoting *In re Murray*, 558 A.2d 710, 711 (Md. 1989)).

---

(7) The lawyer has kept informed about recent developments in the law and is competent to practice.

(8) In addition, a lawyer who has been disbarred must pass the bar examination and the character and fitness examination.

Model Rules for Lawyer Disciplinary Enf't r. 25(E). The accompanying commentary instructs that the "presumption . . . should be against readmission." *Id.* r. 25 cmt. This presumption reflects the primary purpose of attorney disciplinary proceedings—protection of the public. *In re Reinstatement of Wiederholt*, 295 P.3d 396, 399 (Alaska 2013). It is also consistent with our conclusion that a lawyer seeking readmission establish his or her entitlement to reinstatement by a convincing preponderance of the evidence.

Undoubtedly, the protection of the public is of paramount importance in evaluating an application for reinstatement. *See Barnhill*, 847 N.W.2d at 487; *see also In re Pier*, 561 N.W.2d at 299. As we have often observed,

> [a]ttorney disciplinary proceedings are not designed to punish, but rather to determine the fitness of an officer of [the] court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice the law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 181 (Iowa 2015) (second alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 378 (Iowa 2005)). Though we acknowledge the important purposes served by attorney disciplinary proceedings, we share the view of other state supreme courts that "a fallen lawyer may rise again." *In re Cooke*, 42 A.3d at 614 (quoting *In re Murray*, 558 A.2d at 711). In determining whether an attorney previously disbarred for misconduct has demonstrated his or her eligibility for reinstatement, one "major consideration . . . is whether the disbarred attorney has overcome those weaknesses which produced the earlier misconduct." *In re Disciplinary Proceeding Against Rosellini*, 739 P.2d 658, 660 (Wash. 1987); *see In re Reinstatement of Robbins*, 836 P.2d 965, 966 (Ariz. 1992) (en banc).

Mindful of the purposes attorney discipline serves, we conclude the following factors are most relevant to assessing whether an applicant seeking reinstatement of his or her license to practice law in Iowa has proved his or her good moral character, fitness for the practice of law, and worthiness of readmission to the bar:

1. The nature and character of the conduct that led us to revoke the applicant's license to practice law as well as the context in which the applicant engaged in that conduct;

2. Whether the applicant recognizes the wrongfulness and seriousness of the conduct that led us to revoke the applicant's license to practice law;

3. Whether the applicant has demonstrated candor and sincerity in communications with this court and other entities assessing his or her current moral character, fitness for the practice of law, and worthiness for readmission to the Iowa bar;

4. Whether the applicant has demonstrated with respect to any physical or mental condition such as addiction or substance abuse that was a causative factor in the conduct that led to revocation of his or her license:

a. That the applicant has completed appropriate rehabilitative treatment from a qualified treatment provider;

b. That the applicant is presently abstaining from any behavior or substance use believed by his or her qualified treatment provider to be problematic for the applicant and has been abstaining from such behavior or substance use for a significant period of time; and

c. That the applicant is likely to continue to abstain from any such behavior or substance;

5. How much time has passed since the applicant's license to practice law was revoked and the nature of any activities the applicant has engaged in during that time, including whether the applicant has engaged in or attempted to engage in the unauthorized practice of law or any other professional misconduct since the revocation of his or her license;

6. The opinions of the attorneys recommending reinstatement of the applicant's license to practice law with respect to the question of his or her moral character, fitness for the practice of law, and worthiness of readmission to the Iowa bar; and

7. Any other matters shown by the evidence to bear on the question of whether the applicant has good moral character, is fit to practice law, and is in all respects worthy of readmission to the Iowa bar.[6]

---

[6]In determining which factors we find most relevant to evaluating applications for reinstatement, we rely primarily on the criteria appearing in model reinstatement rules promulgated by the American Bar Association and our prior caselaw in a similar context. Specifically, in *In re Peterson*, we considered whether an applicant to the Iowa bar with a prior criminal record had been wrongly denied the opportunity to sit for the Iowa bar examination. 439 N.W.2d at 166. In determining whether the applicant had demonstrated he had the requisite moral fitness for bar membership, we considered the following factors:

1. The nature and character of the offenses committed.

2. The number and duration of offenses.

3. The age and maturity of the applicant when the offenses were committed.

4. The social and historical context in which the offenses were committed.

5. The sufficiency of the punishment undergone and restitution made in connection with the offenses.

6. The grant or denial of a pardon for offenses committed.

7. The number of years that have elapsed since the last offense was committed, and the presence or absence of misconduct during that period.

8. The applicant's current attitude about the prior offenses.

9. The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.

10. The applicant's constructive activities and accomplishments subsequent to the criminal convictions.

11. The opinions of character witnesses about the applicant's moral fitness.

*Id.* at 169 (quoting *In re Manville*, 538 A.2d 1128, 1133 n.4 (D.C. 1988)).

In articulating the factors most relevant to assessing an application for reinstatement, we also rely upon the decisions of other state supreme courts setting

It is within our discretion to place conditions on the reinstatement of a license to practice law following its revocation. Iowa Ct. R. 34.25(16)(*b*). Preconditions on reinstatement may include, but are not limited to, requiring the individual seeking reinstatement to pass the Iowa bar examination. *Id.* Generally, if we determine an individual who otherwise qualifies for reinstatement need not retake the bar examination, we will require the individual to attend and report up to 100 hours of continuing legal education as a condition of reinstatement. *Id.* Additionally, every individual seeking reinstatement of his or her license to practice law in Iowa following its revocation must post a scaled score of at least 80 on the Multistate Professional Responsibility Exam (MPRE) as a precondition of reinstatement. *Id.*

Furthermore, we may subject the continued maintenance of a reinstated law license to ongoing requirements not generally applicable to members of the Iowa bar. *See id.* For example, we may find it appropriate to reinstate a revoked license to practice law subject to the attorney's continued maintenance of malpractice insurance. If the attorney fails to meet a condition we impose on the continued maintenance of his or her reinstated license, we may summarily revoke it without a hearing. *Id.*

---

forth factors found to be relevant in this context. *See, e.g.*, *In re Reinstatement of Wiederhodt*, 295 P.3d at 399–400; *In re Reinstatement of Robbins*, 836 P.2d at 966; *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985); *In re Application of Griffith*, 913 P.2d 695, 700 (Or. 1996) (en banc); *In re Pier*, 561 N.W.2d at 300; *In re Hart*, 822 P.2d 264, 267 (Wash. 1992) (en banc). Likewise, we consider the reinstatement rules adopted in other states setting forth specific criteria to be considered in assessing applications for reinstatement as well as court decisions applying those rules. *See, e.g.*, Ill. Supreme Ct. R. 767(f); N.D. R. Lawyer Discipline 4.5(F); Md. R. 19-752(h)(2); *In re Reinstatement of Golden*, 315 P.3d 377, 380 (Okla. 2013).

### III. Analysis.

The evidence Reilly submitted indicates he complied with the terms of the order revoking his license to practice law and all other procedural requirements set forth in the rule governing reinstatement of a former attorney's law license following its revocation. *See id.* 34.25(7), (8), (9), (15). Therefore, the question of whether Reilly is eligible for the reinstatement of his law license turns on whether he has submitted adequate evidence demonstrating his good moral character, fitness to practice law, and worthiness of readmission to the Iowa bar. *Id.* r. 34.25(15).

In light of the evidence Reilly submitted in support of his application for reinstatement, we conclude he has proved by a convincing preponderance of the evidence that he has good moral character, is fit to practice law, and is in all respects worthy of readmission to the Iowa bar. Though the conduct that led us to revoke Reilly's license to practice law was egregious, it occurred during a relatively brief period following years of bar membership during which Reilly earned a reputation as a particularly diligent and skilled attorney. We find this notable given that Reilly struggled with his casino gambling addiction for years. Although his addiction does not obviate the seriousness of his improper conduct, the evidence he submitted demonstrating his efforts to overcome it supports his eligibility for reinstatement to the bar. For years before and for years after we revoked his license, Reilly voluntarily underwent treatment for his addiction with a licensed mental health provider and certified compulsive gambling counselor. Furthermore, he has managed to abstain from engaging in the behaviors his treatment provider has advised him to avoid for more than fourteen years. Thus, his treatment provider has concluded he requires no further treatment for his addiction.

As his dedication to his recovery might suggest, Reilly has consistently accepted responsibility for the impropriety of his conduct and acknowledged the harm it caused his clients, the bank that reported him to the federal government, and the bar. The members of the bar who have recommended we reinstate Reilly uniformly attest to his good moral character and fitness for the practice of law and express confidence that he is presently equipped to exercise the responsibility and judgment bar membership requires. Their letters commend Reilly for his outstanding legal ability, his commitment to treating his casino gambling addiction, and his acceptance of responsibility and remorse for the harm he caused. Moreover, they confirm Reilly has held a position of executive responsibility with his current employer for years without incident and maintains a personal and professional support system that includes, among others, many of his former colleagues in the bar. Based on our careful examination of the evidence submitted, we believe Reilly has established by a convincing preponderance of the evidence that reinstatement of his license to practice law poses no threat to the public because he has good moral character, is fit for the practice of law, and is in all respects worthy of readmission to the bar.

We note Reilly has maintained his familiarity with current law by means of his subsequent employment and regular reviews of state and federal appellate court decisions. Therefore, we decline to require him to pass the Iowa bar examination as a precondition of the reinstatement of his license to practice law. Nevertheless, given that Reilly has been without a law license for more than ten years, we think it appropriate to require him to report at least thirty hours of continuing legal education, including at least three hours of continuing legal education dedicated to legal ethics, as a precondition of its reinstatement. This is equivalent to the minimum continuing legal education members of the Iowa bar must

report every two calendar years. *See id.* r. 41.3. Accordingly, all continuing legal education courses Reilly has taken since January 1, 2015, shall be counted in satisfaction of this requirement. By rule, Reilly must also post a scaled score of at least 80 on the MPRE as a precondition of the reinstatement of his license to practice law. *Id.* r. 34.25(16)(*b*).

Upon Reilly's demonstration that he has satisfied the preconditions of reinstatement set forth in this opinion, we will order the reinstatement of his license to practice law subject to his continued maintenance of a malpractice insurance policy whenever he is engaged in the private practice of law. Within thirty days of the reinstatement of his license to practice law, Reilly shall provide the Iowa Supreme Court Attorney Disciplinary Board with proof that he has obtained a malpractice insurance policy or a report indicating he is not currently engaged in private practice. Upon his subsequent entry into the private practice of law, if applicable, he shall provide the Board with proof that he has obtained malpractice insurance within thirty days.

## IV. Disposition.

We provisionally grant Reilly's application for reinstatement of his license to practice law in Iowa subject to the conditions set forth in this opinion. If Reilly has not met the preconditions of reinstatement set forth in this opinion by July 30, 2017, we will deny his application for reinstatement without further hearing unless he requests an extension of time. *See id.*

**APPLICATION FOR REINSTATEMENT PROVISIONALLY GRANTED SUBJECT TO THE CONDITIONS SET FORTH IN THIS OPINION.**

This opinion shall be published.