WIGGINS, Justice
(concurring in part and dissenting in part).
I agree with the majority’s conclusion that Morse violated the Iowa Rules of Professional Conduct. However, I cannot agree with the way the majority reached a sanction nor the result.
In the past, our court has determined a sanction when an attorney has misappropriated client’s funds by distinguishing between what I label “legal stealing” and “illegal stealing.” “Legal stealing” allows an attorney to receive a lesser sanction when the attorney misappropriates a client’s funds so long as the attorney has a colorable future claim to the funds misappropriated. See, e.g., Iowa Supreme Ct. Att’y Disciplinary Bd. v. Lubinus, 869 N.W.2d 546, 552 (Iowa 2015). However, if an attorney commits “illegal stealing” and misappropriates funds without a colorable future claim to the funds, we revoke that attorney’s license. Id.
I believed the court developed this distinction because revocations of an attorney’s license were ordinarily permanent. See Comm. on Prof'l Ethics & Conduct v. Brodsky, 487 N.W.2d 674, 675 (Iowa 1992). This distinction has never made sense to me, but I went along with it because of the harshness of the sanction of revocation. See Iowa Supreme Ct. Att’y Disciplinary Bd. v. McCann, 712 N.W.2d 89, 97 (Iowa 2006). The time has come to drop the distinction between legal and illegal stealing when sanctioning an attorney for misappropriating client funds. I reach this conclusion for a number of reasons.
First, the distinction between legal and illegal stealing is absurd. A person who knowingly converts the property of another does not have the character traits we want in a lawyer serving our citizens. Furthermore, the criminal law of this state does not make such a distinction for that very reason. If an independent contractor took money or property from his or her employer without the employer’s permission and at the end of the relationship reduced the bill, the fact that the independent contractor had a colorable future claim to the funds would not be a defense to a charge of theft. The legislature codified the claim-of-right defense. It provides,
No person who takes, obtains, disposes of, or otherwise uses or acquires property, is guilty of theft by reason of such act if the person reasonably believes that the person has a right, privilege or license to do so, or if the person does in fact have such right, privilege or license.
Iowa Code § 714.4 (2015). By its terms, at the time the person takes, obtains, disposes of, or otherwise uses or acquires property, the person must believe he or she has a right to do so at the time the person takes, obtains, disposes of, or otherwise uses or acquires property, not just a colorable future claim to the property. Moreover, Iowa Rule of Professional Conduct 32:1.15 does not contain a claim of right or colorable future claim allowing an attorney to take funds. The clear import of rule 32:1.15 is that property, including money, given to an attorney is to be safeguarded by the attorney, to be used by the attorney for the purpose for which it was given, and only earned by the attorney after the attorney did the work to earn the fee. As the majority found, and I agree, Morse misappropriated funds given to him *149 for a transcript by using the funds for his fee.
Second, the application of the legal and illegal stealing dichotomy undermines the purpose of rule 32:1.15. As an Iowa Law Review note writer recently articulated,
Iowa’s approach fails to effectuate the intent of the ABA. Because the Iowa Supreme Court overvalues flexibility and a particularized approach, the ABA values of uniformity and consistency are lost. While exceptions to Iowa’s misappropriation rule, like the colorable-fu-ture-claim defense and the ambiguous definition of misappropriation, allow the court to tailor sanctions to each case’s specific facts, these factors also lead to inconsistency in sanctions. As noted by the ABA, wide variance and inconsistency in sanctions, such as the sanctions imposed by the Iowa Supreme Court, may cause the public as well as those within the profession to “doubt ... the efficiency and the basic fairness” of the disciplinary system.
The Iowa Supreme Court must delve deep into the factual intricacies of every case that comes before it. With this approach, Iowa strives for “consistency in discipline cases by considering its treatment of lawyers in ‘similar’ cases.” However, while it is true that the ABA values flexibility and a particularized approach may promote fairness, the extent of flexibility in Iowa’s approach may have the opposite effect. Case-by-case approaches like Iowa’s
are often unsuccessful because the court[ ] disregard^] seemingly similar cases, or cannot agree upon the factors that should be considered when assessing similarity, or do[es] not consider the same factors important from case to case. As a result, the quest for “similarity” is chimerical because it is often possible to find both similarities to and distinctions from earlier decisions, giving [the] court[] significant latitude to show that any case is “similar to” or “different from” previous cases.
The result is a sense of arbitrariness, not evenhandedness. The widely varied case law in Iowa regarding sanctions for “seemingly similar” safekeeping viola-tiong demonstrates the failure of this approach.
Allison A. Schmidt, The Old Man and Rule 84(c): A Proposal for the Adoption of Maryland’s Misappropriation Rule in Iowa, 101 Iowa L.Rev. 465, 491-92 (2015) (footnotes omitted) (first quoting Standards for Imposing Lawyer Sanctions pt. I.A (Am. Bar Ass’n 1992); then quoting Leslie C. Levin, The Emperor’s Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions, 48 Am. U.L.Rev. 1, 35, 36-37 (1998)). I wholeheartedly agree with this assessment.
Third, the rules governing the reinstatement of revoked attorneys have changed. We recently adopted Iowa Court Rule 34.25 allowing revoked attorneys to reapply for reinstatement. In applying this new rule, we have provisionally reinstated a revoked attorney. Iowa Supreme Ct. Att’y Disciplinary Bd. v. Reilly, 884 N.W.2d 761, 762 (Iowa 2016) (per curiam).[7] *150 These changes- make it easier for me to revoke the license of an attorney who misappropriates funds from a client with a colorable future claim to those funds.
Finally, sanctions in this area have been disproportionately lower than sanctions for other actions. For example, in Iowa Supreme Court Attorney Disciplinary Bd. v. Taylor, 887 N.W.2d 369, 383 (Iowa 2016), we suspended the license of an attorney for six months when she failed to file her tax returns for ten years. Incredibly, some members of the Morse majority here in Taylor urged a one-year suspension. Id. at 386 (Waterman, J., dissenting). In Taylor, the attorney caused no harm to a client. Nevertheless, here, where the attorney converts his clients’ funds and causes harm to those clients, the attorney gets a shorter suspension.
Accordingly, I would not use the distinction between legal and illegal stealing to determine the proper sanction. Rather, I would apply the objective criteria of the ABA’s Standards for Imposing Lawyer Sanctions (1992). At least twenty-eight states have used the American Bar Association’s standards when imposing discipline.[8]
In situations involving an attorney’s failure to preserve a client’s property, the standards provide,
4.1 Failure to Preserve the Client’s Property
Absent aggravating or mitigating circumstances, upon application of the factors set out in 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property:
4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.
4.12 Suspension is generally appropriate when a lawyer knows or should *151 know that he is dealing improperly with client property and causes injury or potential injury to a client.
4.13 Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.
4.14 Admonition is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.
Standards for Imposing Lawyer Sanctions § 4.1 (Am. Bar Ass’n 1992).
The standards recognize the following factors as aggravating and mitigating:
9.0 Aggravation and Mitigation
9.1 Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 Factors which may be considered in aggravation.
Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by. intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.
9.3Mitigation
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation.
Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(l) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
(3) the respondent’s recovery from the chemical dependency or mental disability, is demonstrated by. a mean *152 ingful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse;
(m) remoteness of prior offenses.
9.4 Factors which are neither aggravating nor mitigating.
The following factors should not be considered as either aggravating or mitigating:
(a) forced or compelled restitution;
(b) agreeing to the client’s demand for certain improper behavior or result;
(c) withdrawal of complaint against the lawyer;
(d) resignation prior to completion of disciplinary proceedings;
(e) complainant’s recommendation as to sanction;
CO failure of injured client to complain.
Id. §§ 9.0-9.4. Applying these factors, the majority should reexamine its sanction under standard 4.11.
Morse knowingly converted the funds and caused client harm. As the Board set forth in its brief,
[Morse] testified that he believed the Stephenson’s appeal had merit. In the end however the appeal was dismissed based on [Morsel’s misconduct. He failed to forward the Stephenson’s $1,400 payment to the court reporter in a timely manner. In fact, he testified he purposefully held the funds in his trust account because the Stephensons had not paid their legal fees. Additionally, [Morse] had the opportunity and did nothing to bring to the Court’s attention the error in its dismissal order stating the Stephenson’s $1,400 check had been . returned for non-sufficient funds.
Respondent’s misconduct directly harmed the Stephenson’s because their appeal was dismissed and they were forever barred from challenging the trial court’s ruling. As the Stephensons stated in their complaint affidavit to the board, “Unfortunately because Dave Morse did not send the money to the court reporter, the case was dismissed by the Iowa Supreme Court and we had to pay more to these two other companies then (sic) we owed by thousands.”
The majority says there was harm to the client, but it is minimal and for this reason, Morse should only get a light suspension. I disagree. Losing the right to appeal is great harm. The right to appeal is fundamental to due process of law. The majority also concedes the district court made a math error of $1708 and acknowledges that amount would be recoverable on an appeal, but then offsets that amount against the cost of the transcript. What the majority does not realize is that if the Stephensons were successful on appeal, we would assess the costs of the appeal, including the cost of the transcript, against the other side. Additionally, $1708 may not mean much to the majority, but to persons in the Stephensons’ financial situation it is a great sum of money.
If the majority would use the objective factors of the ABA’s Standards for Imposing Lawyer Sanctions, the sanction against Morse would surely be more than a thirty-day suspension. The court should stop using the legal and illegal stealing dichotomy when sanctioning a lawyer for conversion. For these reasons, I dissent as to the sanction.

. It is interesting to note, in the case revoking Reilly's license the commission recommended a suspension of three years. See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Reilly, 708 N.W.2d 82, 82 (Iowa 2006). There, Reilly caused no harm to his client, but avoided harming his client by perpetrating a check-kiting scheme to pay his client the money he misappropriated. Id. at 82, 85. In spite of the commission’s recommendation, we revoked his license. Id. at 85. Had we applied the ABA's Standards for Imposing Lawyer Sanctions (1992), we would have probably followed the commission’s recommendations.

. In re Disciplinary Matter Involving Schuler, 818 P.2d 138, 139 (Alaska 1991); In re Fioramonti, 176 Ariz. 182, 859 P.2d 1315, 1320 (1993); In re Fischer, 89 P.3d 817, 819-20 (Colo.2004); Office of Chief Disciplinary Counsel v. Skyers, No. CV106010993S, 2010 WL 5188432, at *3 (Conn.Super.Ct. Nov. 30, 2010); In re Steiner, 817 A.2d 793, 796 (Del.2003) (per curiam); In re Swindall, 266 Ga, 553, 468 S.E.2d 372, 372-73 (1996) (per curiam); Office of Disciplinary Counsel v. Au, 107 Hawai'i 327, 113 P.3d 203, 217 (2005) (per curiam); In re Burchett, 630 N.E.2d 205, 206 (Ind.1994) (per curiam); In re Matney, 248 Kan. 990, 811 P.2d 885, 887 (1991) (per curiam); Anderson v. Ky. Bar Ass’n, 262 S.W.3d 636, 639 (Ky.2008); In re Cardenas, 60 So.3d 609, 613 (La.2011) (per curiam); In re Bulger, No.2013-14, 2013 WL 7876129, at *2 (Mass. State Bar Disciplinary Board Dec. 4, 2013); Att'y Grievance Comm'n of Md. v. West, 378 Md. 395, 836 A.2d 588, 597 (2003); Grievance Adm'r v. Lopatin, 462 Mich. 235, 612 N.W.2d 120, 123 (2000); In re Disciplinary Action Against Rooney, 709 N.W.2d 263, 270 (Minn.2006) (per curiam); Stegall v. Miss. Bar, 618 So.2d 1291, 1295 (Miss.1993) (en banc); In re Forck, 418 S.W.3d 437, 442 (Mo.2014) (en banc); In re Discipline of Hatcher, No. 68702, 2016 WL 3309678, at *2 (Nev. June 14, 2016); In re Wolterbeek’s Case, 152 N.H. 710, 886 A.2d 990, 993 (2005); In re Yalkut, 143 N.M. 387, 176 P.3d 1119, 1127 (2008) (per curiam); Cleveland Bar Ass’n v. Briggs, 89 Ohio St 3d 74, 728 N.E.2d 1049, 1051 (2000) (per curiam) (Cook, J., dissenting); In re Conduct of Koliha, 330 Or, 402, 9 P.3d 102, 104 (2000) (en banc) (per curiam); In re Pier, 561 N.W.2d 297, 299 (S.D.1997); Bailey v. Bd. of Prof’l Responsibility, 441 S.W.3d 223, 234 (Tenn.2014); In re Cassity, 875 P.2d 548, 550 (Utah 1994); In re Strouse, 190 Vt. 170, 34 A.3d 329, 334 (2011) (per curiam); In re Burgess, No. 92-00-1493, 1992 WL 811107, at *4 (Va, State Bar Disciplinary Board Nov. 24, 1992); In re Disciplinary Proceeding Against Haley, 156 Wash.2d 324, 126 P.3d 1262, 1269 (2006); Bd. of Prof'l Responsibility v. Abraham, 376 P.3d 483, 487 (Wyo.2016). Other states have modeled their standards for imposing discipline after the ABA’s standards. See, e.g., In re Disciplinary Action Against Kirschner, 793 N.W.2d 196, 201 (N.D.2011) (per curiam).