868 P.2d 941

**In the Matter of the Application for Reinstatement of Reed Warren KING, Applicant.**

No. SB–93–0069–R.
Comm. No. 91–0044.

Supreme Court of Arizona.

Feb. 4, 1994.

Harriet L. Turney, Chief Counsel, Bruce Hamilton, Executive Director, State Bar of Arizona, for the State Bar.

**ORDER**

FELDMAN, Chief Justice.

Applicant Reed Warren King, having established to the satisfaction of the Disciplinary Commission and this Court that he is qualified for reinstatement to active bar membership; now therefore, pursuant to Rule 72 of the Rules of the Supreme Court,

IT IS ORDERED that Applicant Reed Warren King be reinstated to active membership in the State Bar of Arizona. Applicant Reed Warren King is placed on probation for a period of two years, under the terms and conditions as disclosed in the commission report attached hereto as Exhibit A.

EXHIBIT A

BEFORE THE DISCIPLINARY
COMMISSION OF THE
SUPREME COURT OF ARIZONA

Comm. No. 91–0044

In the Matter of the
Application for
Reinstatement of

REED W. KING,

PETITIONER.

*DISCIPLINARY COMMISSION REPORT*

[Filed Nov. 19, 1993.]

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on October 16, 1993, for oral argument, pursuant to Rule 72(e), R.Ariz.Sup.Ct. The Commission considered the Hearing Committee's recommendation of reinstatement and probation. No objections to the Committee's recommendation were filed.

*Decision*

By a concurrence of the eight members present,[1] the Commission adopts the recommendation of the Hearing Committee that Respondent be reinstated and placed on probation for a period of two years, under the terms and conditions set forth below. The Commission also unanimously adopts the findings of fact and conclusions of law of the Hearing Committee.

1. Commissioner Burlison did not participate in these proceedings.

*Terms of Probation*

Upon reinstatement, Applicant shall be placed on probation for a period of two years, under the following terms and conditions:

1. Applicant shall refrain from engaging in conduct which violates the Rules of Professional Conduct, Rule 42, Ariz.R.Sup.Ct.

2. If any lawsuit is filed or criminal charges are brought against Applicant, he shall send copies of those matters to the State Bar within two weeks of notification.

3. Applicant shall obtain a practice monitor approved by Chief Bar Counsel who will agree to meet with Applicant no less than once per month. The practice monitor must agree to file quarterly reports, reporting the dates upon which he and Applicant met, the number of cases Applicant has pending, the nature of those cases, whether Applicant is handling the cases in a timely manner, any problems identified by the monitor in terms of Applicant's handling of cases, and any recommendations he or she may have for addressing these problems.

4. Applicant shall file quarterly reports with the Director of the Law Office Management Assistance Program (LOMAP) showing:

    a. the amount of income realized during the reporting period and the source thereof;

    b. the amount of debt repayment effectuated during the reporting period;

    c. debt balances; and

    d. any major purchases (i.e., greater than $2,500.00).

5. Applicant will submit to unscheduled inspections and random audits by the LOMAP Director or her designee not to exceed once per month for the first six months of probation and thereafter not to exceed quarterly unless some question is raised regarding Applicant's finances. If an irregularity is identified, Applicant will submit to a resumption of inspections and random audits on a monthly basis.

6. Applicant shall issue no NSF checks on any trust or general operating account maintained in connection with the practice of law.

7. Applicant shall provide copies of his state and federal income tax returns.

8. The State Bar may obtain credit reports at its discretion.

9. As long as Applicant is employed by a law firm or another attorney, he will not be a signatory on a trust account. If Applicant becomes self-employed, he will abide by the State Bar of Arizona Trust Account Guidelines (revised May 1, 1984), and make all financial records and accounts available for inspection by the LOMAP Director upon reasonable request.

10. Should Applicant become self-employed during the period of probation, he shall instruct, in writing, any individual or entity responsible for preparing settlement drafts or other checks in which a third party may have an interest to notify the client or third party of the issuance of any such draft or check.

11. As long as Applicant is employed by a law firm or other attorney, he shall inform, in writing, any individual or entity responsible for preparing settlement drafts or other checks in which a third party may have an interest that the draft or check must name a co-payee in addition to Applicant, such as the client, the law firm or another lawyer in the firm.

12. Applicant shall advise any prospective employer of the misconduct which led to his suspension, the disciplinary action taken, and these terms of probation.

13. Applicant shall provide the Disciplinary Clerk and the Director of Membership Records of the State Bar of Arizona written notice of any change in his address or employment status within thirty days of said change.

14. Applicant shall pay all reasonable costs associated with the monitoring or enforcement of these terms of probation.

15. In the event it comes to the attention of the State Bar that Applicant may be in breach of any of the above terms of probation or has violated the Rules of Professional Conduct during the term of his suspension, the State Bar shall file a notice of non-compliance or violation with the Disci-

plinary Clerk who will refer this matter to a hearing committee or hearing officer for an evidentiary hearing to be held as soon as practicable, but in no event later than forty-five days thereafter, to determine whether Applicant is in breach of the terms of probation. The burden of proof of non-compliance or violation shall be by a preponderance of the evidence. At the conclusion of any evidentiary hearing on non-compliance or violation, the hearing committee or hearing officer will issue a report containing findings of fact, conclusions of law and a recommendation. The matter will then proceed pursuant to Rule 53(d) and (e), Ariz.R.Sup.Ct.

## Underlying Facts

Applicant was suspended from the practice of law for a period of two years effective July 7, 1986, for violations of DR 6–101(A)(3), DR 9–102(A), DR 9–102(B)(3), and DR 9–102(B)(4).[2]

Respondent represented a plaintiff (the "Client") in a personal injury action arising out of an accident. Applicant also represented the Client concerning medical expenses she had incurred with a number of providers as a result of the accident. The Client planned to use her prospective recovery in the lawsuit to discharge those debts.

The case settled in July 1982 for $6,250.00. This amount was immediately deposited into Applicant's trust account. Respondent disbursed $2,010.90 to the Client, indicating that this was the balance remaining after his fees and the outstanding medical expenses were paid. However, using the figures Applicant provided to the Client in his "accounting" of the disbursements, the amount paid to the Client was actually the amount that was owed to the creditors. The Client should have received approximately sixty dollars more than she received.

In addition to simply confusing the disbursements, Applicant made another, more serious, error. Rather than paying the creditors the balance he believed was due to them, Respondent used those funds to resolve his own personal financial difficulties. Applicant then lied to the creditors when asked when they would be paid.

In January 1983, Applicant's misrepresentations became clear when the Client met with the major creditor's representative. Subsequent to this meeting, the major creditor contacted Applicant directly, and secured full payment of the debt.

When the Client contacted Applicant in January 1983 concerning her discovery, he advised her that a mistake had been made.[3] Later that month, Applicant arranged for the payment of the remaining outstanding debts although, by this time, one of the creditors had ceased doing business.

When Applicant learned that the State Bar had received a complaint against him in this matter, he arranged to be interviewed by an investigator of the State Bar, and candidly acknowledged that the allegations were substantially correct. He stated that he had been in a precarious financial situation at the time of the misconduct due to unforeseen circumstances. Respondent was very cooperative throughout the disciplinary proceedings, accepted absolute responsibility for his actions, and exhibited sincere remorse.

## Application for Reinstatement

Applicant filed a petition for reinstatement on February 4, 1991. In April 1991, after a newspaper article was published alleging that Applicant, among others, was involved in farm subsidy abuse, the State Bar, with Applicant's cooperation and approval, continued the reinstatement proceedings to conduct further investigation into these alleged improprieties. Upon thorough investigation of the matter, the State Bar was unable to

---

2. As the conduct giving rise to the suspension occurred prior to February 1, 1985, the Rules of Professional Conduct, former Rule 29(a), Ariz. R.Sup.Ct., prevailed. However, as the application for reinstatement was filed after February 1, 1985, these proceedings are governed by the

Ariz.R.Sup.Ct., Rules 71 and 72, effective February 1, 1985.

3. Applicant later admitted to the Hearing Committee that this was not true; the problems were not the result of a mistake.

uncover any evidence linking Applicant to the alleged abuses.

The United States Attorney's Office, after conducting its own investigation, has made no effort to commence criminal proceedings. While the U.S. Attorney's Office fell short of issuing a statement affirming it has no intention of ever pursuing criminal proceedings, a representative from the Department of Agriculture has indicated that the investigation has shifted away from Applicant and other individuals. In addition, Applicant has subsequently been approved for participation in programs of the U.S. Department of Agriculture. The State Bar is satisfied with this information, and is now urging Applicant's reinstatement.

The matter came on for hearing before the Committee on April 20, 1992, and June 18, 1993. Applicant appeared pro per.

### Discussion of Decision

Rule 72(e), Ariz.R.Sup.Ct., indicates that an applicant for reinstatement must demonstrate his rehabilitation, compliance with all applicable discipline orders and rules, fitness to practice, and competence. The Committee, upon consideration of the testimony presented, the application for reinstatement, and the rehabilitation demonstrated, found that Applicant has carried his burden of proof. The Committee found that, during the term of suspension, Applicant complied with all relevant disciplinary orders and rules imposed as a result of his suspension. During this period, Applicant also worked diligently to maintain his competency in the areas of agricultural, water, and real estate law, which are his intended areas of practice, by actively reviewing current decisions and literature, attending classes and seminars, serving on committees of the Arizona Cotton Growers' Association, and participating in various activities directed at improving legislation in these areas of practice. Applicant has been a law-abiding citizen during the period of suspension, and has shown remorse for his past conduct. Applicant also presented an abundance of letters from friends and colleagues attesting to his excellent character

and high ethical standards, and urging that he be reinstated.

The Committee found that the likelihood of Applicant again misappropriating funds is remote. Virtually all of the reference letters reflect the belief that Applicant's misconduct was aberrational. The State Bar is also convinced that Applicant's misconduct was out of character and unlikely to be repeated.

Applicant has been undergoing financial difficulties, and has filed for a Chapter 11 reorganization. The Commission expressed initial concern, as the original misconduct which led to Applicant's suspension stemmed from his then-existing personal financial problems. However, the probation recommended herein includes numerous terms which have been crafted specifically to address this particular concern. The Commission is convinced these terms will adequately deter any anticipated problems.

During the period of suspension, Applicant was informally reprimanded for conduct involving neglect of a legal matter, failure to communicate with a client, and failure to return files to a client. However, this sanction was issued for conduct occurring prior to Applicant's suspension. In addition, the record on appeal contains a letter from the complainant in that matter, stating that the matter was fully resolved satisfactorily without additional cost to the client. The Commission does not find that this reprimand detracts from the character and rehabilitation of Applicant as presented in these proceedings.

Upon observation of Applicant at oral argument, the Commission was impressed with his candor and obvious willingness to cooperate throughout these disciplinary proceedings, as well as Applicant's acceptance of total responsibility for his actions. Applicant has apparently made every effort to regain the excellent character and reputation he enjoyed prior to his suspension. It is apparent to the Commission that Applicant has been successful in that effort. The Commission believes that Applicant's conduct was an aberration, and agrees with the Committee that the chance of recurrence is remote. The Commission finds that Applicant has carried his burden of proving that he is

sufficiently rehabilitated to resume the practice of law. The Commission unanimously recommends that Applicant be reinstated, and that, upon reinstatement, he be placed on probation for a period of two years, under the terms and conditions set forth above.

RESPECTFULLY SUBMITTED this 19th day of November, 1993.

/s/Steven L. Bossé
Steven L. Bossé, Chairman
Disciplinary Commission