SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| In the Matter of an Application for Reinstatement of a Suspended Member of the State Bar of Arizona | ) ) ) ) | Arizona Supreme Court No. SB-12-0040-R |
| | ) ) | Office of the Presiding Disciplinary Judge |
| RICHARD B. JOHNSON, Attorney No. 2118 | ) ) ) | No. PDJ20129029 |
| | ) ) | |
| Applicant. | ) | **O P I N I O N** |
| | ) | |

Review of Report and Recommendation on
Application for Reinstatement from
the Office of the Presiding Disciplinary Judge

**REINSTATED**

_____

JENNINGS STROUSS & SALMON PLC                                     Phoenix
    By   J. Scott Rhodes
Attorney for Richard B. Johnson

STATE BAR OF ARIZONA                                              Phoenix
    By   Hunter F. Perlmeter
Attorney for State Bar of Arizona

_____

**P E L A N D E R**, Justice

**¶1**        Under Arizona Rule of the Supreme Court 65(b)(4), this Court automatically reviews the disciplinary hearing panel's report in attorney reinstatement cases.  We granted applicant Richard B. Johnson's request to respond to the hearing panel's report, which recommended denial of his application for reinstatement to the active practice of law.  Johnson challenged the hearing panel's recommendation and asked us to clarify the

1

legal standard for reinstatement. We review questions of law de novo, but review factual findings applying a clearly erroneous standard. Ariz. R. Sup. Ct. 59(*l*); *see also In re Arrotta*, 208 Ariz. 509, 514 ¶ 25, 96 P.3d 213, 218 (2004).

¶2 On January 10, 2013, we issued an order reinstating Johnson to the active practice of law. This opinion explains our reasoning.

## I.

¶3 Johnson was admitted to practice in Arizona in 1968. He had a small law firm and focused his practice on trusts, estates, and probate matters. In 2008, Johnson was suspended from the practice of law for six months and one day, pursuant to an agreement for discipline by consent. His suspension resulted from two counts of misconduct that occurred in 2006: submitting a will that falsely purported to be the original to the court for admission to probate after he lost the original (count one), and improperly purchasing a house from a client estate without advising his client to seek independent counsel (count two).

¶4 Although Johnson became eligible for reinstatement in 2009, *see* Ariz. R. Sup. Ct. 64(e)(1), he did not apply until 2012. A three-member hearing panel, chaired by the Presiding Disciplinary Judge, held a hearing at which Johnson and several others testified. *See* Ariz. R. Sup. Ct. 52, 65(b)(1)(A). The State Bar stipulated, and the hearing panel agreed, that Johnson

2

had met his burden of proving "compliance with all applicable discipline orders and rules, fitness to practice, and competence." Ariz. R. Sup. Ct. 65(b)(2); *see also* Ariz. R. Sup. Ct. 48(e) (applicant seeking reinstatement has burden of proof). The hearing panel therefore focused on the issues of rehabilitation and moral qualifications. *See* Ariz. R. Sup. Ct. 64(a), 65(b)(2).

¶5 Johnson acknowledged his prior ethics violations. Regarding count one, Johnson testified that he had rationalized his preparing and filing a fabricated will because he was embarrassed about misplacing the original will, was extremely busy at the time, wanted to help the client, and believed nobody would be harmed. The house-purchase misconduct in count two, Johnson explained, resulted because he became too casual in his professional dealings with a client, to the detriment of a beneficiary of the estate whom Johnson did not like.

¶6 Johnson attributed his misconduct to two weaknesses: his "moral compass failed him" and he deviated from his core beliefs. During his extended time away from the profession, Johnson reexamined his core values, recommitted himself to his religious beliefs and church activities, and invested substantial time in community service. Five people testified on Johnson's behalf in support of his reinstatement. No evidence directly refuted Johnson's evidence of rehabilitation.

3

**¶7**      After considering all evidence, the hearing panel found insufficient proof "that the ethical problems that led to [Johnson's] sanctioned behavior have been rectified." The panel likewise concluded that Johnson had failed to establish his rehabilitation by clear and convincing evidence and recommended that his application for reinstatement be denied.

## II.

**¶8**      The requirements for reinstatement are similar to the requirements for initial admission to the Arizona bar. *Compare* Ariz. R. Sup. Ct. 34(b)(1)(B), (C), 34(c), 36(b), *with* Ariz. R. Sup. Ct. 64, 65. An applicant for reinstatement must demonstrate that he or she "possesses the moral qualifications and knowledge of the law required for admission to practice law in this state in the first instance." Ariz. R. Sup. Ct. 64(a). In addition, an applicant for reinstatement "must show by clear and convincing evidence that [he or she] has been rehabilitated and/or overcome his or her disability." *Id.*; *see also* Ariz. R. Sup. Ct. 65(b)(2); *In re* (*Lee K.*) *King*, 212 Ariz. 559, 563 ¶ 10, 136 P.3d 878, 882 (2006).

**¶9**      This additional requirement is not meant as further punishment. *In re Peterson*, 108 Ariz. 255, 256–57, 495 P.2d 851, 852–53 (1972). Rather, we require evidence of rehabilitation to protect the public. *Id.*; *see also In re Arrotta*, 208 Ariz. at 512 ¶ 12, 96 P.3d at 216 ("[O]ur primary

4

responsibility remains at all times the protection of the public.").  Because a lawyer seeking reinstatement has already "violated the trust placed in him as an officer of the court," we "'endeavor to make certain that [we do] not again put into the hands of an unworthy petitioner that almost unlimited opportunity to inflict wrongs upon society possessed by a practicing lawyer.'"  *In re Arrotta*, 208 Ariz. at 512 ¶ 11, 96 P.3d at 216 (alteration in original) (quoting *In re Pier*, 561 N.W.2d 297, 300 (S.D. 1997)).

¶10     Proving rehabilitation is a two-step process.  First, the applicant must identify the weakness or weaknesses that caused the misconduct.  *Id.* at 513 ¶ 17, 96 P.3d at 217.  Second, the applicant must "demonstrate that he [or she] has overcome those weaknesses."  *Id.*  In determining whether the applicant has proven rehabilitation by clear and convincing evidence, we also consider the nature and extent of the underlying misconduct because "the more serious the misconduct that led to disbarment, the more difficult is the applicant's task in showing rehabilitation."  *Id.* at 512 ¶ 12, 96 P.3d at 216 (citing *In re Robbins*, 172 Ariz. 255, 256, 836 P.2d 965, 966 (1992)).  But "the severity of a lawyer's misconduct in itself does not preclude reinstatement if the lawyer can establish that he has rehabilitated himself."  *Id.*

¶11     In *Arrotta*, for example, we denied a disbarred

5

lawyer's application for reinstatement because he failed to identify the cause of his misconduct, *id.* at 513 ¶ 18, 96 P.3d at 217, and "[n]othing else in the record explain[ed]" it, *id.* at 514 ¶ 21, 96 P.3d at 218. Arrotta simply did not "understand why he acted as he did" and, in connection with the criminal proceedings against him, wrote that he had "no good, or valid, answer that can provide any justification" for his misconduct. *Id.* at 513 ¶ 19, 96 P.3d at 217. In contrast, we found that the applicant in *Robbins* had identified a "severe episode of depression" as the cause of his misconduct, 172 Ariz. at 255, 836 P.2d at 965, and in *In re* (*Reed W.*) *King* the applicant identified his "precarious financial situation" as the cause of his misconduct, 177 Ariz. 358, 360, 868 P.2d 941, 943 (1994). In both those cases, we ordered reinstatement.

¶12 Here, the hearing panel found that Johnson "personally, through introspection and reflection, identified the weaknesses that produced the misconduct and took the necessary steps to overcome those weaknesses with self-regulated discipline." This is all that *Arrotta* requires, yet the panel demanded more, stating that Johnson's identification of the weaknesses that produced the misconduct "tells us little of the cause of that weakness." The hearing panel required Johnson to identify not only the weaknesses that caused the underlying misconduct and the steps taken to overcome them, which Johnson

6

did, but also the deeper "root cause" of those weaknesses or the "character flaw that caused the decision to engage in unethical misconduct."

**¶13** A reinstatement hearing, however, does not necessarily require the peeling back of multiple layers of causation or psychoanalysis. Instead, the applicant must clearly and convincingly prove rehabilitation by specifically identifying the causal weakness leading to each count and explaining how the weakness has been overcome. Based on the record here, we conclude that Johnson met that burden.

**¶14** "[W]e recognize that, in many instances, a counselor can assist an individual in understanding the reasons for his ethical violations and can help the person acquire tools needed to prevent future misconduct." *In re Arrotta*, 208 Ariz. at 514 ¶ 22, 96 P.3d at 218. But, as the hearing panel correctly observed, neither mental health treatment nor expert testimony is required to establish rehabilitation for readmission purposes. *Id.* Rather, an applicant's identification of his or her weaknesses may suffice. *See In re Robbins*, 172 Ariz. at 255, 836 P.2d at 965; *In re (Reed W.) King*, 177 Ariz. at 360, 868 P.2d at 943.

**¶15** The hearing panel found, as do we, that Johnson identified the weaknesses underlying both counts of his prior misconduct. The evidence on that point was sufficient to

7

satisfy the first prerequisite for rehabilitation under *In re Arrotta*, 208 Ariz. at 513 ¶ 17, 96 P.3d at 217.

¶16        The next issue, then, is whether Johnson convincingly demonstrated that he has overcome his weaknesses. *Id.* The applicant must show by clear and convincing evidence "the positive actions he has taken to overcome the weaknesses that led to his [sanction]." *Id.* at 515 ¶ 29, 96 P.3d at 219. "The required demonstration may come from any number of showings." *Id.* ¶ 30. For example, the applicant may present evidence of "participation in community or charitable organizations, specialized instruction or education, counseling, or other similar [activities]." *Id.* at 516 ¶ 31, 96 P.3d at 220. The applicant may also present testimony from character witnesses, whose well founded opinions "we will carefully consider." *Id.* at 515 ¶¶ 28-29, 96 P.3d at 219. In addition, an applicant's "[a]ccepting responsibility for past misdeeds constitutes an important element of rehabilitation." *Id.* ¶ 29. These categories of evidence are neither exhaustive nor conclusive, and no single piece of evidence is necessary or sufficient to prove rehabilitation. *Id.* at 512 ¶¶ 13-14, 96 P.3d at 216 (stating that in evaluating an application for reinstatement, we do not mechanically apply the pertinent factors that bear on rehabilitation).

¶17        The hearing panel's report refers to the abundant

evidence Johnson presented of his efforts to rehabilitate himself. First, Johnson acknowledged his misconduct. Second, he engaged in extensive charitable activities and was strongly committed to his community. Indeed, the panel noted that Johnson's community service during his suspension period was undertaken "for the best of reasons" and "demonstrate[d] his good character." Third, the panel considered the testimony of five individuals, each of whom strongly supported Johnson's reinstatement, as "aid[ing] his application." Finally, the panel considered Johnson's own testimony "that core values and character must be achieved through self discipline, adherence to a strong moral creed, and charitable service," principles that governed his actions and decisions after his suspension.

¶18     Like the hearing panel, we do not view Johnson's positive actions in a vacuum. Rather, our analysis must determine whether his actions show that he in fact has overcome the identified weaknesses. *See id.* at 515 ¶ 29, 96 P.3d at 219. Here, Johnson's charitable activities, community involvement, and recommitment to his faith are specific actions he took to overcome his prior shortcomings.

¶19     Community service, religious commitment, and meditative reflection are not a panacea for applicants seeking reinstatement. But in this case, Johnson's actions served to advance his rehabilitation. Those actions were designed to

9

realign Johnson's moral compass and recalibrate his approach to developing personal and professional relationships, thereby addressing the weaknesses that led to his misconduct. We also find significant that Johnson engaged in the various rehabilitative activities throughout his extended time away from the practice of law.

**¶20** In concluding that Johnson had not met his burden of showing rehabilitation, the hearing panel relied in part on *In re Lazcano*, 223 Ariz. 280, 222 P.3d 896 (2010), *In re* (*Lee K.*) *King*, 212 Ariz. 559, 136 P.3d 878 (2006), and *In re Hamm*, 211 Ariz. 458, 123 P.3d 652 (2005). These cases correctly recognize that the applicant's burden of proving rehabilitation increases with the severity of the underlying conduct. But the circumstances of those cases differ materially from those present here. They all involved applicants who had committed serious felonies — attempted sexual assault, attempted murder, and first degree murder. Johnson, on the other hand, was not charged with any crime, has no other disciplinary offenses, and was found in the prior disciplinary proceedings in this case to have had "no selfish or dishonest motive." Nor did Johnson's misconduct involve any attempt to gain financially. We do not take lightly the severity of the misconduct that led to Johnson's suspension, but the burden imposed in cases like *Arrotta* on applicants who are convicted felons is not warranted

10

here.

**¶21**    Johnson presented clear and convincing evidence of rehabilitation, through both his own, uncontroverted testimony and that of the several witnesses.   Nothing in the hearing panel's report suggests that it found Johnson's testimony not credible or otherwise suspect.   On the contrary, the panel praised Johnson's "laudable efforts" and accorded them "substantial weight."

## III.

**¶22**    In cases such as this, "the bottom line must always be whether the applicant has *affirmatively shown that he has overcome those weaknesses that produced his earlier misconduct, i.e.,* whether he has been rehabilitated."   *In re Arrotta*, 208 Ariz. at 512 ¶ 14, 96 P.3d at 216 (quoting *In re Robbins*, 172 Ariz. at 256, 836 P.2d at 966) (internal quotation marks omitted).   We hold, however, that to prove rehabilitation an applicant for reinstatement need not establish what was or might have been the underlying cause of the identified weakness that led to the misconduct.   Because the hearing panel seemingly required such a showing, and because we find no other basis for denying Johnson's application for reinstatement to the active practice of law, we grant the application.

_____
John Pelander, Justice

11

CONCURRING:

_____
Rebecca White Berch, Chief Justice


_____
Scott Bales, Vice Chief Justice


_____
Robert M. Brutinel, Justice


_____
Ann A. Scott Timmer, Justice