MATTHEW S. PARK, #31715 Petitioner: v. THE PEOPLE OF THE STATE OF COLORADO Respondent: No. 21PDJ082
Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado
June 28, 2022
 Following a reinstatement hearing, a hearing board denied Matthew S. Park (attorney registration number 31715) reinstatement to the practice of law under C.R.C.P. 251.29. Park may not file another petition for reinstatement for two years. 
 In September 2020, Park was suspended for one year and one day, with three months served and the rest stayed upon a two-year period of probation, subject to conditions. Though Park was eligible to seek reinstatement by affidavit under C.R.C.P. 251.29(b), he never took the necessary steps to be reinstated by affidavit and to be placed on probation. His disciplinary suspension was premised on his misconduct in practicing law while he was on administrative suspension, including by accepting two personal injury cases and by commingling his personal funds with those of his client and of third-party lien holders. 
 The Hearing Board concluded that reinstatement was not appropriate because Park failed to prove by clear and convincing evidence that he followed disciplinary orders and rules following his suspension; that he is fit to practice law; and that he has been rehabilitated from his misconduct. 
 The case file is public per C.R.C.P. 251.31. Please see the full opinion below. 
 Michele Melnick Office of Attorney Regulation Counsel. 
 Matthew S. Park, Petitioner. 
 Steven Meyrich, Dr. Robert A. Munson, Hearing Board Members. 
 Cheryl Stevens, Colorado Supreme Court. 
 1
 OPINION AND DECISION DENYING REINSTATEMENT UNDER C.R.C.P. 251.29(E) 
 WILLIAM R.LUCERO, PRESIDING DISCIPLINARY JUDGE. 
 Matthew S. Park ("Petitioner") seeks reinstatement of his law license after he was suspended from the practice of law for one year and one day, with three months to be served and the rest stayed upon a two-year probation. But Petitioner did not reinstate by affidavit after completing the three-month served portion of his suspension. Instead, he has remained suspended from the practice of law since October 2020, which necessitated that he petition to reinstate his law license. Petitioner has failed to prove by clear and convincing evidence that he is fit to practice law, that he has complied with all disciplinary rules and orders, and that he has been rehabilitated from his underlying misconduct. As such, his petition for reinstatement must be denied. 
 I. PROCEDURAL HISTORY 
 On September 4, 2020, a hearing board issued an "Opinion and Decision Imposing Sanctions Under C.R.C.P. 251.19(b)" in case number 19PDJ057, suspending Petitioner's law license for one year and one day, with three months served and the rest stayed upon a two-year period of probation.[1] The conditions of his probation included his attendance at ethics and trust account schools and, if he practiced law during his period of probation, his participation in quarterly meetings with a financial monitor. Under the terms of his discipline, Petitioner's suspension took effect on October 27, 2020,[2] making him eligible on January 27, 2021, to seek reinstatement by affidavit under C.R.C.P. 251.29(b). Petitioner never took the necessary steps to be reinstated by affidavit and placed on probation, however. He has thus remained suspended since October 2020. 
 2
 On November 11, 2021, Petitioner filed with Presiding Disciplinary Judge William R. Lucero ("the PDJ") a "Petition for Reinstatement" under C.R.C.P. 251.29(c).[3] Michele Melnick, on behalf of the Office of Attorney Regulation Counsel ("the People"), answered on November 23, 2021.[4] The PDJ set the matter for a reinstatement hearing and directed the parties to submit hearing briefs no later than February 17, 2022.[5] Petitioner did not file his brief until March 2, 2022. 
 On March 3, 2022, the PDJ presided over Petitioner's reinstatement hearing, held via the Zoom videoconferencing platform. The PDJ was joined on the Hearing Board by lawyer Steven Meyrich and Dr. Robert Munson. Petitioner appeared pro se and Melnick represented the People. The Hearing Board considered testimony from Petitioner and the People's investigator Matthew Gill, who testified as an advisory witness. The PDJ admitted into evidence stipulated exhibits S1-S7 as well as Petitioner's exhibit A. The PDJ also accepted the parties' ten stipulated facts. In addition, the PDJ accepted Petitioner's untimely filed hearing brief. 
 II. FINDINGS OF FACT 
 The findings of fact here are drawn from testimony offered at the reinstatement hearing, where not otherwise noted. Petitioner was admitted to practice law in Colorado on May 11, 2000, under attorney registration number 31715.[6] He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this reinstatement proceeding.[7] 
 Petitioner's Background and Disciplinary History 
 Petitioner completed law school at the University of Denver Sturm College of Law, earning his degree in 2000. After he graduated, his law practice focused on administrative law and filing paperwork with various government agencies. Petitioner testified that he had no experience with litigation or court procedures and never "set foot" in a courtroom. As such, he admits he does not have a firm grasp of procedural deadlines or prehearing requirements. 
 Petitioner was administratively suspended from the practice of law in 2013 because he did not comply with Colorado's continuing legal education ("CLE") requirements and did not pay his attorney registration fees.[8] He was again administratively suspended on May 1, 2015, 
 3
 after he failed to pay his attorney registration fees for 2015.[9] He was not reinstated from that suspension until January 31, 2019.[10] 
 Petitioner has been formally disciplined twice. In December 2003, he stipulated to a suspension of ninety days, all stayed upon the completion of a two-year period of probation.[11] That discipline was premised on his failure to supervise nonlawyer staff who had drafted and delivered legal documents in a client matter.[12] He also failed to maintain sufficient trust account records and commingled client funds with his own funds.[13] He successfully completed the terms of the two-year probation.[14] He testified at this reinstatement hearing that because he was represented by a lawyer in that disciplinary matter, he did not learn the PDJ's rules and procedures and relied on his lawyer to meet all the required deadlines. 
 On September 4, 2020, a hearing board imposed the suspension from which Petitioner now seeks to reinstate.[15] Petitioner defended the case pro se because, he said, he did not have the financial resources to hire a lawyer. In that matter, the hearing board found that Petitioner had accepted two personal injury cases during his administrative suspension, thereby contravening Colo. RPC 3.4(c) and Colo. RPC 5.5(a)(1).[16] He then settled the personal injury matters and deposited the settlement funds directly into his operating account, commingling his client's and a third party's funds with his own funds in violation of Colo. RPC 1.15A(a).[17] 
 Petitioner was ordered to pay the costs of his 2019 disciplinary case by September 18, 2020, but he did not pay them until March 24, 2021.[18] He acknowledged that he had received a copy of the disciplinary opinion, which set forth certain deadlines. He explained during the reinstatement hearing that he did not forget or neglect to pay the costs but rather lacked the funds to timely pay. At the time the costs became due, he said, he had significant housing and food expenses, but once he had available funds he promptly paid the costs. Although Petitioner said that he provided Gill with documentation evidencing his financial hardship, he did not seek to introduce the documents during this reinstatement hearing. He explained that he had assumed that his financial records would automatically be admitted into evidence at the hearing. 
 4
 On October 27, 2020, the PDJ issued an "Order and Notice of Suspension," making Petitioner's three-month served suspension effective that day.[19] According to Petitioner, he received a copy of the order. The order directed him to comply with C.R.C.P. 251.28(d), which required him to file an affidavit with the PDJ within fourteen days setting forth his pending matters and attesting that he had notified both his clients and all jurisdictions where he was licensed of his suspension.[20] The affidavit was due by November 10, 2020, but Petitioner did not file it until April 28, 2021.[21] According to Petitioner, he did not ignore the PDJ's orders but rather attempted to timely file documents in his disciplinary case. He did not understand the disciplinary procedures, he explained, because he was generally unfamiliar with litigation deadlines and he did not have counsel to guide him. He also stated that he could not find online resources so that he could learn the rules, and he averred that the People did not help him when he sought guidance. 
 Events Since Petitioner's Suspension 
 As discussed above, Petitioner was eligible in his 2019 disciplinary matter to seek reinstatement by affidavit under C.R.C.P. 251.29(b) and to begin his two-year probationary period in January 2021.[22] But he never reinstated by affidavit and was never placed on probation. Instead, he has remained suspended since October 27, 2020. 
 Petitioner testified that he spent time during his suspension volunteering, working, and completing his CLE requirements. He said that he spent many hours volunteering at the Korean Presbyterian Church, and he explained that he assisted the church to set up its nonprofit status, much like a paralegal would. Gill testified, however, that he did not receive much information from Petitioner about these volunteer efforts, save for Petitioner's own recounting and an email from Reverend Young Woo, who noted that Petitioner's volunteer work involved assisting him with a pension fund. 
 Petitioner also testified that he works at machinemon.com, performing front-end website services.[23] His duties there, he said, involve maintaining the company's website and developing its interface. He stated that although he is underemployed at machinemon.com, he has been unable to secure more gainful employment and thus continues to experience financial difficulties. 
 Finally, Petitioner declared that he completed his CLE requirements while he was suspended.[24] Gill testified, however, that Petitioner completed forty-one of the forty-six CLE credits after filing his petition for reinstatement. Gill also observed that none of the CLE 
 5
 courses that Petitioner completed pertain to money management, trust account management, or the Rules of Professional Conduct. 
 Petitioner did not complete any conditions of his probation while he was suspended. He testified that initially he did not consider attending the People's trust and ethics schools during his suspension because he believed that he needed to be on probation to take those courses. He also said that he could not have afforded to travel from Texas to Colorado to attend the classes. He eventually concluded, however, that he should take the courses even though he had not been placed on probation. Accordingly, on February 13, 2022-a little over two weeks before the hearing-he called the People to inquire about attending their trust account class remotely. The next day, Nicolette Chavez of the Office of Attorney Regulation Counsel replied by email, informing him that except for one course scheduled for December 2022, the classes were offered only in person.[25] At the hearing, Gill added that the People's trust and ethics schools had been offered remotely from July 2020 until November 2021. 
 In December 2020, Petitioner moved to Texas. He still has a Colorado residence, but he has no intention of returning to live here. Nor does he want to be employed as a lawyer in the traditional sense. Rather, he plans to seek employment as a document reviewer. He thinks he can make more money doing that work if he is a licensed lawyer. He vowed to limit his future professional pursuits to document review to protect the public. 
 Petitioner's Reflections on His Misconduct 
 According to Petitioner, financial hardship is at the root of his misconduct. He explained that a lack of funds prevented him from paying his attorney registration fees, resulting in the administrative suspension of his law license from 2015 to 2019. He testified that for "many, many years" following a car accident he suffered from injuries and posttraumatic stress disorder, which prevented him from working and making a living.[26] His house was foreclosed on during this time, he said. Although he paid his attorney registration fees in 2019, he testified that he has been unable to meet that obligation since then, as the loss of his law license created a cycle of financial difficulties. 
 Petitioner maintained that he inadvertently engaged in the unauthorized practice of law because he could not pay his attorney registration fees and was unaware of the resulting administrative suspension. He also explained that he commingled funds only because his trust account had been inactive. He testified that he has since attempted to adhere to Colorado's trust account standards; just two days before the hearing, he said, he 
 6
 received notice from his bank that his trust account was again inactive, so he called the bank and promptly reactivated it. 
 At the hearing, Petitioner acknowledged that he took the two personal injury cases that led to his 2019 disciplinary matter even though he lacked litigation experience.[27] He explained that he considered those cases to be insurance cases that would lead to quick settlement offers from insurers and thus were "not court work." He maintained that e-filing complaints in those matters did not require an understanding of court rules. 
 Finally, Petitioner testified that he takes responsibility for his misconduct and that he is remorseful that he did not follow the rules. He stated that he respects the PDJ and the People but feels penalized for his financial situation. He failed to meet deadlines and does not understand the rules because he could not afford to hire a lawyer, he said. Even so, he declares that he harbors no bitterness toward the disciplinary system. 
 III. LEGAL ANALYSIS 
 To be reinstated to practice law in Colorado under C.R.C.P. 251.29(c), a lawyer must prove by clear and convincing evidence that the lawyer has complied with applicable disciplinary orders and rules, is fit to practice law, and has been rehabilitated.[28]Reinstatement signifies that the lawyer possesses all of the qualifications required of applicants admitted to practice law in Colorado.[29] 
 Compliance with Disciplinary Orders and Rules 
 Under C.R.C.P. 251.29(c)(4), a lawyer petitioning for reinstatement must show compliance with all disciplinary orders and rules. Petitioner contends that he has complied, albeit in an untimely manner, with all provisions of the September 2020 disciplinary opinion, his October 2020 order of suspension, and the rules governing suspended lawyers. He also reasons that his belated effort to pay the costs of his 2019 disciplinary case demonstrates his willingness to comply with orders. The People assert that Petitioner has failed to obey orders and has not complied with the disciplinary rules during his suspension. The Hearing Board agrees with the People. 
 Petitioner was required to pay the costs of the underlying disciplinary proceeding by November 2020 but did not do so until March 2021. He did not seek a payment plan or an extension of time to pay in the interim. Although he claimed he was financially unable to timely pay the costs, he did not proffer any evidence at the hearing other than his own testimony to support that claim. He likewise filed his affidavit under C.R.C.P. 251.28(d) three 
 7
 months late. Further, he never submitted an affidavit under C.R.C.P. 251.29(b). Had he done so, he could have been reinstated and placed on probation without having to petition for reinstatement at hearing where he bears the burden of proof. And in this proceeding Petitioner neglected to timely file his hearing brief, instead submitting it the day before the hearing. He also ignored the rules governing the admission of exhibits. Given this overwhelming evidence of Petitioner's failure to comply with deadlines, the Hearing Board cannot find that he clearly and convincingly proved that he followed disciplinary orders and rules following his suspension. 
 Fitness to Practice Law 
 We next examine whether Petitioner is fit to practice law, as measured by whether he has maintained professional competence during his suspension and whether he is qualified to resume practicing law if reinstated. 
 Petitioner argues that his efforts to stay current on CLEs and his volunteer work through the Korean Presbyterian Church demonstrate his fitness to practice law and his trustworthiness. He contends that the timing of his CLE credits-the majority of which he completed after he filed for reinstatement-should not reflect negatively on his fitness to return to the practice of law. He also maintains that he proved his fitness to practice by promptly reactivating his trust account. Petitioner vows not to practice law as he had done before but to limit his practice to document review. 
 The People dispute that Petitioner's CLE courses and volunteer work support his fitness to return to the practice of law. None of his CLEs, they argue, have any relation to trust account management or professional ethics, and the meager evidence of the nature and substance of his volunteer work was largely limited to his own testimony. According to the People, he thus did not meet his burden on this issue. In fact, they argue, his concession that he does not understand how this proceeding works and his failure to meet prehearing deadlines further support their argument that he is unfit. 
 The Hearing Board concludes that Petitioner has not met his burden of proof to show he is fit to practice. Although Petitioner completed forty-six CLE credits, none of the courses related to trust accounting or to the Rules of Professional Conduct implicated in his misconduct. He earned forty-one of the credits after November 2021, which suggests that he has not sustained efforts to maintain professional competence but rather has indiscriminately rushed through courses at the eleventh hour. That he waited to investigate how to complete the People's trust and ethics schools until mere weeks before his reinstatement hearing further points to his indifference in maintaining his professional fitness. Had he undertaken the effort at the beginning of his suspension, he could have completed the classes remotely between October 2020 and November 2021. And although he reactivated his Colorado trust account, that effort does not support a finding that he has a meaningful understanding of his trust account obligations. 
 8
 In addition, Petitioner presented no evidence of his work with the church except his testimony that he helped to establish its nonprofit status and Gill's limited recollection of Reverend Woo's email. This testimony does not give us any comfort that during his suspension he has developed an understanding of how to manage his trust account or comply with his ethical duties, however. 
 We are also troubled by Petitioner's willingness to represent clients in personal injury matters despite what he characterizes as his lack of familiarity with litigation procedures.[30]He took those cases, he said, because insurers invariably offer to settle personal injury matters before litigation begins. This uninformed and incorrect testimony, which we interpret as suggesting that he was somehow excused from understanding the mechanisms of litigation, is deeply disquieting. 
 Likewise, the Hearing Board finds that the basic legal errors Petitioner made in his underlying disciplinary case and during this reinstatement proceeding raise significant questions about his fitness to practice. As an example, he repeatedly testified that he missed deadlines in the underlying disciplinary matter because he was not represented by counsel, in contrast to his 2003 disciplinary matter. As such, he said, he lacked a basic understanding of how the proceeding worked and thus missed important deadlines, such as filing a C.R.C.P. 251.29(b) affidavit. Likewise, he could not explain, save for his lack of understanding of court rules, why he failed to timely file a hearing brief or provide anticipated exhibits to the People before his reinstatement hearing, as the rules and court standards require. Nor did he clarify why he expected the financial documents that he had provided to Gill to be admitted at the hearing without further action on his own part. To the extent that Petitioner was unable to meet established deadlines without the assistance of counsel, we find that he is not fit to practice. To the extent that Petitioner made no attempt to learn the rules and procedures in a case in which his personal stakes were so high, we likewise find that he is not fit to practice. 
 And although Petitioner now pledges to limit his practice to document review, forswearing any other legal involvement, Colorado lawyers' licenses cannot be limited to cover only certain activities or restricted to select areas of law. Were Petitioner reinstated, he would be allowed to practice in any area of law, including areas in which his knowledge is insufficient to provide adequate counsel to his clients. We thus cannot and will not entertain his request for a limited license. 
 In sum, we find that Petitioner has not mustered clear and convincing evidence that he is fit to practice law. 
 9
 Rehabilitation 
 Finally, the Hearing Board must consider whether Petitioner has been rehabilitated from his misconduct. The Hearing Board should not grant reinstatement simply on a showing that Petitioner has engaged in proper conduct or refrained from further misconduct during his suspension.[31] Instead, in assessing Petitioner's rehabilitation, we consider the seriousness of his original discipline[32] and whether he has experienced a change in his state of mind.[33] In this analysis we are guided by the leading case of People v. Klein, which enumerates several criteria for evaluating rehabilitation: character; recognition of the seriousness of the misconduct; conduct since the imposition of the original discipline; candor and sincerity; recommendations of other witnesses; professional competence; present business pursuits; and community service and personal aspects of his life.[34] The Klein criteria provide a framework to assess the likelihood that Petitioner will again commit misconduct. 
 We start by assessing the seriousness of Petitioner's misconduct and whether he has addressed the shortcomings underlying that misconduct, since discipline is necessarily predicated upon a finding of some shortcoming, whether it be a personal or professional deficit.[35] We first consider his disciplinary record.[36] Petitioner's prior discipline demonstrates a worrisome trend of law practice and trust account mismanagement. In the 2003 case, he failed to supervise nonlawyers, did not maintain sufficient trust account records, and commingled client funds with his own. In the 2019 matter, he engaged in the unauthorized 
 10
 practice of law while administratively suspended for failing to pay his attorney registration fees from 2015 to 2019. He also again commingled funds when he deposited client and third-party funds directly into his operating account rather than into a trust account as mandated by the rules. In both cases he mismanaged his trust account, which, with appropriate education, could have been avoided. The reoccurring issue in both cases is Petitioner's failure to understand and follow the rules governing lawyers in Colorado. That issue also appeared in this matter, as Petitioner made little to no effort to understand the procedural rules for this proceeding or to comply with deadlines, deflecting responsibility by insisting that his financial circumstances, inexperience, and inability to hire a lawyer were to blame. But as a licensed lawyer, Petitioner is expected to understand the rules in the proceedings in which he is involved. None of his explanations justify his failure to heed his obligations under the rules. 
 Moreover, though Petitioner twice mismanaged his trust account-as litigated in both of his disciplinary cases-he presented no evidence that he has amended his trust account practices or deepened his understanding of his trust account obligations other than reactivating his unused trust account. While he characterized that action as a proactive measure that demonstrates his fitness to practice, we perceive it only as a minimal effort to address his shortcomings in trust account management. Petitioner's late attempt to enroll in the People's trust account school, undertaken only weeks before the reinstatement hearing, also strikes us as a half-hearted measure to address his prior misconduct. 
 We turn now to Petitioner's other conduct since the imposition of his discipline. We applaud his volunteer efforts for the Korean Presbyterian Church, but we also note that other than his own statements and Gill's brief description of Reverend Woo's email, we lack any information about the duties he performed or the time he devoted to those tasks. We received no testimony or personal recommendation from Reverend Woo to support Petitioner's character or his claims that he has been rehabilitated from his failings in law practice management. In fact, Petitioner neglected to call any character witnesses to speak on his behalf at the hearing. Likewise, the nature of his website development work does not quell the concerns we have about his ability and willingness to become familiar with and follow the rules governing lawyers. 
 In sum, though Petitioner expressed sincere remorse concerning his misconduct, he does not appear to have learned how to properly manage a trust account or the importance of adhering to the rules governing lawyers, causing us to doubt that he recognizes the seriousness of his misconduct. He was never placed on probation and thus did not reap the benefits of working with a financial monitor. Nor did he attend the People's trust account and ethics schools. His CLE work appears to have had no substantive focus and conferred little, if any, educational value in the proper management of trust accounts. Finally, Petitioner did not demonstrate that he possesses the professional competence necessary to be reinstated. Instead, he blamed his inability to understand and follow the procedures governing his reinstatement hearing on his lack of finances to hire counsel and on his own inexperience with court rules. Further, Petitioner's testimony revealed his deep 
 11
 misunderstanding about the nature of the personal injury matters he had undertaken for clients. For these reasons, we are unconvinced that Petitioner has undergone a change in his state of mind such that we can be assured that he will not commit similar misconduct in the future. Accordingly, we conclude that Petitioner has failed to produce clear and convincing evidence that he has been rehabilitated. 
 IV. CONCLUSION 
 Petitioner seems to lack an understanding of his obligations under the Rules of Professional Conduct, and he has failed during his suspension to seek any appropriate experience or education to cure these deficits. We conclude that he has not demonstrated by clear and convincing evidence any of the three prongs that he is required to prove to gain reinstatement: we find neither that he complied with disciplinary rules or orders, nor that he is fit to practice, nor that he has been rehabilitated from the causes of his underlying misconduct. We therefore deny Petitioner's petition for reinstatement. 
 V. ORDER 
 1. The Hearing Board DENIES Petitioner's "Petition for Reinstatement." Petitioner MATTHEW S. PARK, attorney registration number 31715, SHALL NOT be reinstated to the practice of law in Colorado. 
 2. Under C.R.C.P. 251.29(1), Petitioner SHALL pay the costs of this proceeding. The People SHALL submit a statement of costs on or before Thursday, April 21, 2022, 2022. Petitioner MUST file his response, if any, within seven days. The PDJ will then issue an order establishing the amount of costs to be paid or refunded and a deadline for the payment or refund. 
 3. Any posthearing motion MUST be filed with the Hearing Board on or before Thursday, April 28, 2022. Any response thereto MUST be filed within seven days. 
 4. Petitioner has the right to appeal the Hearing Board's denial of his petition for reinstatement under C.R.C.P. 251.27. 
 5. Under C.R.C.P. 251.29(g), Petitioner MAY NOT petition for reinstatement within two years of the date of this order. 
 12
 STEVEN MEYRICH, HEARING BOARD MEMBER, DR. ROBERT MUNSON, HEARING BOARD MEMBER. 
 13
 --------- 
 Notes: 
 [1] Ex. Si. 
 [2]Stip. Facts H 7. 
 [3] Ex. S2. 
 [4] Ex. S3. 
 [5] "Reinstatement Scheduling Order" § IV.7.A (Dec. 15, 2021). 
 [6] Stip. Facts H 1. 
 [7] See C.R.C.P. 251.1(b). 
 [8] Ex. Si at 3. 
 [9]Stip. Facts Tl 2; Ex. Si at 14. 
 [10]Stip. Facts H 3. 
 [11]Stip. Facts H 4; Ex. S6. 
 [12]Ex. S6 at 48-49. 
 [13]Ex. S6 at 47. 
 [14]Stip. Facts H 5. 
 [15]Stip. Facts 11 6; Ex. Si. 
 [16]Ex. S-iat-19. 
 [17]Ex. Si at 17. 
 [18]Foote note Available 
 [19]Stip. Facts H 7. 
 [20]C.R.C.P. 251.28(d); see also "Order and Notice of Suspension" (Oct. 27, 2020). 
 [21]Stip. Facts H 9; Ex. S5. 
 [22]Ex. Si. 
 [23]In his response to the People's interrogatories, Petitioner identified the employer as MM Global Services, Inc. Ex. S4 at 35. 
 [24]See generally Ex. S7. 
 [25]Ex. A. Petitioner did not give the People a copy of this email string before the reinstatement hearing. He said that he did not realize that he needed to do so. The People moved for the email's admission at the hearing, and it was marked as Petitioner's exhibit A. 
 [26]In summer 2006, Petitioner was a passenger in a serious car accident that resulted in a fatality. As a result, he was hospitalized for six months and endured thirty surgeries, including a leg amputation. See Ex. Si at 13. 
 [27] Petitioner testified that he took "many dozens of personal injury cases." 
 [28] C.R.C.P. 251.29(b). 
 [29] C.R.C.P. 251.29(c)(3); C.R.C.P. 2o8.i(5)(a)-(j) (listing essential eligibility requirements for admission to practice law in Colorado). 
 [30] We note that Petitioner also attested in his responses to the People's interrogatories that he "provided free legal service for a family law matter in [sic] pro bono." Ex. S4 at 33. 
 [31]See C.R.C.P. 251.29(c)(3); see also In re Cantrell, 785 P.2d 312, 313 (Okla. 1989) ("[Reinstatement will not automatically be granted on evidence that [Petitioner] has engaged in only proper conduct, even where no contrary evidence is presented.") (citing In reSharpe, 499 P.2d 406, 409 (Okla. 1972)). 
 [32]See Lawyers' Manual on Prof I Conduct (ABA/BNA) 101:3013 (2012) ("Examination of a lawyer's rehabilitation and fitness begins with a review of the seriousness of the original offense"). 
 [33]See Cantrell, 785 P.2d at 314 (noting with approval that rehabilitation "is a 'state of mind' and the law looks with favor upon rewarding with the opportunity to serve, one who has achieved 'reformation and regeneration.'" (quoting In re Alger Hiss, 333 N.E.2d 429 (Mass. 1975)). 
 [34]756 P.2d 1013, 1015-16 (Colo. 1988) (interpreting language of C.R.C.P. 241.22, an earlier version of the rule governing reinstatement to the bar). We note that the Klein decision relies upon an early edition of the Lawyers' Manual on Professional Conduct (ABA/BNA) 101:3005, which listed the above factors for assessing the rehabilitation of lawyers seeking reinstatement. A new online practice guide, which draws on the manual, sets forth a number of other factors to consider when evaluating a lawyer's rehabilitation: the seriousness of the original offense, conduct since being disbarred or suspended, acceptance of responsibility, remorse, how much time has elapsed, restitution for any financial injury, maintenance of requisite legal abilities, and the circumstances of the original misconduct, including the same mitigating factors that were considered the first time around. Lawyers' Manual on Prof'l Conduct (ABA/BNA) 101:3001 § 20.120.30, Bloomberg Law (database updated July 2020). While some of these newly articulated factors are encompassed in our analysis, we do not explicitly rely on them as guideposts for our decision. 
 [35] See In re Johnson, 298 P.3d 904, 906-07 (Ariz. 2013) (approving a two-step process to show rehabilitation: first, identifying the shortcoming that caused the misconduct, and second, demonstrating that the shortcoming has been overcome); Tardiff v. State Bar, 612 P.2d 919, 923 (Cal. 1980) (considering a petitioner's character in light of the shortcomings that resulted in the imposition of discipline). 
 [36] See C.R.C.P. 251.29(e) ("In deciding whether to grant or deny the petition, the Hearing Board shall consider the attorney's past disciplinary record."). 
 ---------